Jordan L. Lurie (SBN 130013)
Jordan.Lurie@capstonelawyers.com
Tarek H. Zohdy (SBN 247775)
Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
Karen L. Wallace (SBN 272309)
Karen.Wallace@capstonelawyers.com
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:  (310) 556-4811
Facsimile:   (310) 943-0396

Attorneys for Plaintiffs
Ryan and Sarah Wildin

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN and SARAH WILDIN, individually, and on behalf of a class of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>FCA US LLC, a Delaware limited liability company,<br><br>Defendant. | Case No.:  **'17CV2594 GPC MDD**<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>(1)  Violations of California's Consumers Legal Remedies Act<br>(2)  Violations of Unfair Competition Law<br>(3)  Breach of Implied Warranty pursuant to Song-Beverly Consumer Warranty Act<br>(4)  Breach of Implied Warranty pursuant to the Magnuson-Moss Warranty Act<br>(5)  Unjust Enrichment<br><br>**DEMAND FOR JURY TRIAL** |

**INTRODUCTION**

1.      Plaintiffs Ryan and Sarah Wildin ("Plaintiffs") bring this action for themselves and on behalf of all persons in the United States who purchased or leased any 2017-2018 Chrysler Pacifica vehicles equipped with a 3.6-liter V6 engine and a 9-Speed 948TE FWD Automatic Transmission ("Class Vehicles") designed, manufactured, marketed, distributed, sold, warranted and serviced by FCA US LLC, a Delaware limited liability company ("FCA" or "Defendant").

2.      This case is brought by Plaintiffs on the basis that the Class Vehicles contain a design defect that causes the vehicles to shut off or stall without warning ("Stalling Defect").

3.      According to a petition to the National Highway Traffic Safety Administration ("NHTSA") for a defect investigation, filed by the Center for Auto Safety, "[m]ore than 50 individuals have reported to NHTSA that their 2017 Chrysler Pacifica has lost all motive power without warning…at varying speeds, ranging from while the vehicle has been sitting idle to traveling at 40 mph on municipal roads, to 60 miles per hour while driving in a tunnel."[1]

4.      The owner's manual for the 2017 Chrysler Pacifica expressly warns against the dangers associated with operating the vehicle with the transmission in neutral or the engine shut off: "Do not coast in NEUTRAL and never turn off the ignition to coast down a hill. These are unsafe practices that limit your response to changing traffic or road conditions. You might lose control of the vehicle and have a collision." (Manual at 340.) The manual also advises that "continued operation" following any reduction of power to the electric power steering system "could pose a safety risk to yourself and others." (Manual at 343.)

---

[1] *See* Adam J. Cohen, "Incoming Petition from Center for Auto Safety," Center for Auto Safety (Nov. 20, 2017), available at https://static.nhtsa.gov/odi/inv/2017/INBC-DP17003-70118.pdf (NHTSA Action Number: DP17003, "Open Investigation – Stall/Loss of Motive Power," 2017 Chrysler Pacifica Van Investigations (Dec. 1, 2017).)

5.     FCA is aware of the Stalling Defect in the Class Vehicles based on consumer complaints. As Eric Mayne, a spokesman for Fiat Chrysler Automobiles, stated in with respect to the petition, FCA is "continuing to monitor [its] vehicles and collect data…. This is ongoing."[2]

6.     The Stalling Defect prevents the driver from operating the vehicle as intended, which results in a range of unsafe conditions, including the inability to change speed or steer, often while in traffic and at high rates of speed.  For example, according to one driver's NHTSA complaint, the engine in his Class Vehicle "stopped" while he was driving, and "[his] family was almost struck by oncoming traffic."[3] And according to a recent news report about the problem, another driver stated that his Chrysler Pacifica, with only 308 miles on the odometer, "just died" while traveling 70 miles an hour on a busy highway, and lost all electrical power, including the power steering, narrowly avoiding a collision.[4]  Another driver who reported a similar experience, driving at about 20 miles per hour in traffic, explained that "[t]he car indicated that it was still on and in drive but actually was 'completely off'…The 'screen said, 'Car must be in park to place in drive.'"[5] The hazards presented – to the driver and others – by the driver's loss of control are unreasonable.

7.     The 2017 Chrysler Pacifica is reportedly an updated version of the

---

[2] Patrick Olsen, "Safety Group Urges Recall of 2017 Chrysler Pacifica Minivans Over Stalling Issue," Consumer Reports (Nov. 20, 2017), www.consumerreports.org/recalls/recall-urged-for-2017-chrysler-pacifica-minivans-over-stall-issu/

[3] *See*, 2017 Chrysler Pacifica 10/23/2017 complaint to NHTSA, Safercar.gov, *Search for Safety Problems* http://www-odi.nhtsa.dot.gov/owners/Search SafetyIssues (last visited Dec. 27, 2017).

[4] Neal E. Boudette, "Chrysler Pacifica Owners Say Minivans Suddenly Shut Off," The New York Times (Nov. 20, 2017), www.nytimes.com/2017/11/20/business/chrysler-pacifica.html.

[5] David P. Willis, "Chrysler Pacifica stalling frightens Berkeley driver," USA Today (Dec. 1, 2017 at 1:59 pm), http://www.app.com/story/money/business/consumer/press-on-your-side/2017/12/01/chrysler-pacifica-stall/909399001/.

Chrysler Town & Country, with a 9 speed automatic transmission and a "gearbox lifted from the Chrysler 200 sedan."[6] While the "Pacifica is built on an entirely new platform, [it shares] an engine, transmission and a few parts with other Fiat Chrysler automobiles."[7] As one reviewer noted, "Chrysler dropped the well-known Town and Country name… not to confuse but to shift expectations."[8]

8.     According to the owner's manual, the nine-speed transmission, controlled using a rotary electronic gear selector, was "developed to meet the needs of current and future FWD/AWD vehicles. Software and calibration is refined to optimize the customer's driving experience and fuel economy." (Manual at 337.)

9.     The Class Vehicles are also equipped with an automatic shutdown feature called the Engine STOP/START System (ESS) intended to reduce fuel consumption by stopping the engine "automatically during a vehicle stop if the required conditions are met."[9] (Manual at 344-347.)

10.     The Class Vehicles' 9-Speed 948TE FWD Automatic Transmission is manufactured by ZF Friedrichshafen AG. It has been in development since at

_____

[6] Ron Sessions, "5 Interesting Things about the 2017 Chrysler Pacifica," Autobytel.com, https://www.autobytel.com/minivans/car-buying-guides/5-interesting-things-about-the-2017-chrysler-pacifica-130656/ (last visited Dec. 29, 2017).

[7] Charles Fleming, "2017 Chrysler Pacifica: Return of the American van," Los Angeles Times (May 27, 2016 at 6:00 am), http://www.latimes.com/business/autos/la-fi-hy-chrysler-pacifica-review-20160519-snap-story.html.

[8] Robert Duffer, "2017 Chrysler Pacifica minivan is king of the family car hill," Chicago Tribune (July 14, 2016, 9:00 am), http://www.chicagotribune.com/classified/automotive/sc-2017-chrysler-pacifica-autoreview-0714-20160713-story.html.

[9] See, e.g., FCA US, "All-new 2017 Chrysler Pacifica Maintains Segment Leadership for FCA US with Upgraded Gas-Powered Model and First Hybrid Minivan," Press Release (Jan. 11, 2016), http://media.fcanorthamerica.com/newsrelease.do?id=17218&mid=.

CLASS ACTION COMPLAINT

least 2010 and was originally intended for Chrysler vehicles beginning in 2013.[10] FCA has been plagued by consumers complaints about problems with the transmission since the 9 speed's introduction in the 2014 Jeep Cherokee and 2015 Chrysler 200.[11] As Fiat Chrysler CEO Sergio Marchionne admitted in 2015, "[w]e have had to do an inordinate amount of intervention on that transmission."[12] FCA has released numerous service bulletins pertaining to the computer software that controls the 9 speed transmission. In fact, responding to questions regarding "troubling consumer complaints" about the 9 speed automatic transmission, Mr. Marchionne confirmed that "[FCA has] been working our ass off with [designer ZF Friedrichshafen] on the nine speed [and] There were some things that were built in as a technical solution that proved to be, in hindsight, unwise, and so the remedial stuff has been put in place."[13]

11.     Since at least March 2016, when the Chrysler Pacifica was released and consumers began posting complaints publicly, Defendant knew or should have known of the Stalling Defect that impairs operation of the Class Vehicles

---

[10] *See, e.g.*, Drew Winter, "ZF to Supply 'Groundbreaking 9-speed FWD Transmission to Chrysler," WardsAuto (Jan. 11, 2011), http://wardsauto.com/news-analysis/zf-supply-groundbreaking-9-speed-fwd-transmission-chrysler; Manufacturing Group, "FCA US completes 1 millionth 9-speed transmission," Today's Motor Vehicles (Sep. 11, 2015), http://www.todaysmotorvehicles.com/article/automotive-manufacturing-powertrain-transmission-fca-9-speed-091115/; Larry P. Vellequette, "Another fix for Jeep's troubled 9-speed: Software upgrades come after consumer complaints pile up," Automotive News (Feb. 2, 2015 at 12:01 am), http://www.autonews.com/article/20150202/OEM01/302029930/another-fix-for-jeeps-troubled-9-speed.

[11] *See, e.g.*, Clifford Atiyeh, "Holy Shift: ZF 9-speed Automatic Problems Mount, Chrysler Releases Third Software Update for Jeep Cherokee," Car and Driver (Feb. 4, 2015 at 1:55 p.m.), https://blog.caranddriver.com/holy-shift-zf-9-speed-automatic-problems-mount-chrysler-releases-third-software-update-for-jeep-cherokee/.

[12] Vellequette, "Another fix for Jeep's troubled 9-speed," *supra*.

[13] Larry P. Vellequette, "Marchionne says FCA will continue to make V-8s despite tightening regs," Automotive News (Sep. 14, 2015), http://www.autonews.com/article/20150914/OEM01/309149958/marchionne-says-fca-will-continue-to-make-v-8s-despite-tightening.

and creates significant safety risks as FCA, by its own admission, "routinely monitors the performance of is vehicles using information from multiple data streams."[14]  On information and belief, FCA also monitors other sources of customer complaints, including online owners' forums.

12.    Additionally, FCA knew or should have known about the Stalling Defect through sources not available to consumers, including pre-market testing data pertaining to the 9-Speed 948TE FWD Automatic Transmission, high failure rates and replacement part sales data, consumer complaints to NHTSA (which FCA monitors), and other, aggregate post-market data from FCA dealers about the problem in the Class Vehicles.

13.    On information and belief, FCA and its agents knew about the Stalling Defect and failed to disclose it to Plaintiffs and Class Members.

14.    Because FCA will not notify Class Members about the Stalling Defect, Plaintiffs, Class Members, and the general public remain subject to hazards that often arise without warning.

15.    The Stalling Defect is inherent in each Class Vehicle and was present in each Class Vehicle at the time of sale or lease.

16.    FCA knew about and concealed the Stalling Defect and its attendant hazards from Plaintiffs and Class Members, at the time of sale, lease, and repair and thereafter.  In fact, instead of repairing the Stalling Defect, FCA either refused to acknowledge its existence or performed repairs that simply masked symptoms.

17.    If they had known about the Stalling Defect at the time of sale or lease, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles or would have paid less for them.

18.    As a result of their reliance on FCA's omissions, owners and/or

---

[14] Boudette, "Chrysler Pacifica Owners Say Minivans Suddenly Shut Off," *supra*.

lessees of the Class Vehicles, including Plaintiffs, suffered an ascertainable loss of money, property, and/or value of their Class Vehicles.

## THE PARTIES

**Plaintiffs Ryan and Sarah Wildin**

19.     Plaintiffs Ryan and Sarah Wildin are California citizens who reside in Hemet, California.

20.     In or around September 2016, Plaintiffs purchased a new 2017 Chrysler Pacifica from Carl Burger Dodge Chrysler Jeep Ram ("Carl Burger"), an authorized FCA dealer in San Diego County.

21.     Plaintiffs purchased their vehicle primarily for personal, family, or household use.  FCA manufactured, sold, distributed, advertised, marketed, and warranted the vehicle.

22.     Passenger safety and reliability were factors in Plaintiffs' decision to purchase the Chrysler Pacifica.  Before purchasing their vehicle, Plaintiffs spent time researching the Chrysler Pacifica on FCA's corporate website, on authorized dealership websites, and through general online searches using a web browser (*i.e.* Google).  Based on their research, Plaintiffs believed that the Chrysler Pacifica would be safe and reliable.  Plaintiffs also test drove the vehicle with a dealership salesperson and inspected the window sticker before buying.

23.     Had FCA disclosed the Stalling Defect before Plaintiffs purchased their vehicle, Plaintiffs would have seen such disclosures and been aware of them.  Indeed, FCA's omissions were material to Plaintiffs.  Like all Class Members, Plaintiffs would not have purchased their Class Vehicle, or would have paid less for it, had they known of the Stalling Defect.

24.     Since purchasing their vehicle, Plaintiffs have experienced symptoms of the Stalling Defect on multiple occasions. On or around December

11, 2017, for example, their Chrysler Pacifica stalled while they were driving on the highway, and Plaintiffs were almost rear-ended by another vehicle. As a result of such occurrences, Plaintiffs' vehicle returned their vehicle for repairs to an authorized FCA repair facility on two occasions.

25.     On December 6, 2017, at 44,363 miles, Plaintiffs delivered their vehicle to Hemet Chrysler Dodge Jeep Ram complaining that the vehicle "died" while they were driving at about 45 mph.  The repair order stated simply that the technician was unable to verify the complaint, and no repairs were performed.

26.     On December 13, 2017, Plaintiffs complained again to Hemet Chrysler Dodge Jeep Ram about symptoms of the Stalling Defect, stating that it feels like the clutch in their Chrysler Pacifica is "going out," and it stalls when they are driving over 65 mph. "The repair order states that, though the technician was not able to detect any trouble codes or duplicate the problem, and a TCM update was performed and the TCM memory reset.

27.     Since their December 13, 2017 visit, the vehicle has continued to exhibit the Stalling Defect and FCA has been unable, or unwilling, to repair it.

28.     At all times, Plaintiffs, like all Class Members, have driven their vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**Defendant**

29.     Defendant FCA is a limited liability company organized and in existence under the laws of the State of Delaware and registered to do business in the State of California.  FCA's Corporate Headquarters are located at 1000 Chrysler Drive, Auburn Hills, Michigan 48326.  FCA designs, manufactures, markets, distributes, services, repairs, sells, and leases passenger vehicles, including the Class Vehicles, nationwide and in California.  FCA is the warrantor and distributor of the Class Vehicles in the United States.

30.     At all relevant times, Defendant was and is engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and selling automobiles and motor vehicle components in San Diego County and throughout the United States.

## JURISDICTION

31.     This is a class action.

32.     Plaintiffs and other members of the Proposed Class are citizens of states different from Defendant's home state.

33.     On information and belief, aggregate claims of individual Class Members exceed $5,000,000.00 in value, exclusive of interest and costs.

34.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d).

## VENUE

35.     FCA, through its business of distributing, selling, and leasing the Class Vehicles, has established sufficient contacts in this district such that personal jurisdiction is appropriate.  Defendant is deemed to reside in this district pursuant to 28 U.S.C. § 1391(a).

36.     In addition, a substantial part of the events or omissions giving rise to these claims and a substantial part of the property that is the subject of this action are in this district.  Plaintiffs' Declarations, as required under California Civil Code section 1780(d) but not pursuant to *Erie* and federal procedural rules, reflect that a substantial part of the events or omissions giving rise to the claims alleged herein occurred, or a substantial part of property that is the subject of this action is situated, in San Diego County, California.  They are attached as Exhibits 1 and 2.

37.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a).

## FACTUAL ALLEGATIONS

38.     Since 2016, FCA has designed, manufactured, distributed, sold, and

leased the Class Vehicles. FCA has sold, directly or indirectly, through dealers and other retail outlets, thousands of Class Vehicles in California and nationwide. On information and belief, the only way to acquire a Class Vehicle is through one of FCA's authorized dealerships.

39.     As discussed above, the Class Vehicles contain a design defect that causes an unexpected and complete shut down or stalling while driving, often at high speeds.

40.     The Stalling Defect causes a total loss of power, including power steering, which prevents acceleration, deceleration, and steering and significantly impairs drivers' control, increasing the risk of accidents.

41.     FCA has confirmed similar symptoms in other vehicles, including the 2015 Chrysler 200,[15] and is aware of the Stalling Defect in the Chrysler Pacifica based at least on customer complaints, to the extent that FCA is "continuing to monitor [its] vehicles and collect data."[16] For example, in October 7, 2015, FCA released service bulletin 21-053-15 in response to complaints about erratic shifting in vehicles equipped with the 9 speed automatic transmission. The bulletin provided technicians with "information on how to perform the new scan tool based transmission Quick Learn procedure" and was required to improve "concern[s] of poor shift quality" in the Jeep Cherokee, the Chrysler 200, the Jeep Renegade, the Ram ProMaster City, and the Fiat 500X.[17] Technicians were instructed to perform any applicable software updates to the Transmission Control Module (TCM) and Powertrain Control Module (PCM).

---

[15] *See, e.g.*, Clifford Atiyeh, "78,000 Chrysler 200 Sedans Recalled for Stalling, Engaging Neutral," Car and Driver (Aug. 21, 2015 at 4:13 pm), https://blog.caranddriver.com/78000-chrysler-200-sedans-recalled-for-stalling-engaging-neutral/.

[16] Olsen, "Safety Group Urges Recall of 2017 Chrysler Pacifica Minivans Over Stalling Issue," *supra*.

[17] This service bulletin superseded an earlier version, 21-035-14 REV.A, released on November 1, 2014. The bulletin was subsequently updated as 21-013-16 on March 24, 2016.

CLASS ACTION COMPLAINT

42.   Since June of 2016, because FCA, by its own admission, routinely monitors "multiple data streams" for information regarding the performance of is vehicles, including complaints filed with federal regulatory agencies,[18] Defendant knew or should have known that a dangerous design defect causes the Class Vehicles to shut down or stall at speed.  In addition to customer complaints to authorized dealerships, warranty and goodwill claims, and customer complaints made directly to FCA, on information and belief, FCA also monitors informal complaints made by owners online in forums.

43.   FCA knew or should have known about the Stalling Defect through sources not available to consumers, including pre-market testing data, early consumer complaints to FCA and its dealers who are their agents for vehicle repairs, testing conducted in response to those complaints, high failure rates and replacement part sales data, consumer complaints to NHTSA, and other, aggregate post-market data from FCA dealers about the problem.

44.   On information and belief, Defendant's corporate officers, directors, or managers knew about the Stalling Defect and failed to disclose it to Plaintiffs and Class Members, at the time of sale, lease, repair, and thereafter.

45.   Because FCA will not notify Class Members of the Stalling Defect, Plaintiffs, Class Members, and the general public remain subject without warning to safety-related risks.

46.   The alleged Stalling Defect is inherent in each Class Vehicle and was present in each Class Vehicle at the time of sale.

47.   At the time of sale, lease, and repair and thereafter, FCA knew about and concealed from Plaintiffs and Class Members the Stalling Defect present in every Class Vehicle and its attendant safety risks.  In fact, instead of repairing the Stalling Defect, FCA either refused to acknowledge its existence or

---

[18] Boudette, "Chrysler Pacifica Owners Say Minivans Suddenly Shut Off," *supra*.

performed repairs that simply masked them. Indeed, consistent with Plaintiffs' experience, consumers frequently complain that their vehicles fail to detect any failure or error codes and FCA-authorized dealers are unable to duplicate the malfunctions.[19]

48. If they had known about the Stalling Defect at the time of sale or lease, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles or would have paid less for them.

### The Stalling Defect Poses an Unreasonable Safety Hazard

49. The Stalling Defect is dangerous, preventing drivers from changing speed or steering, often while in traffic and at high rates of speed. The Stalling Defect causes the Class Vehicles to shut down or stall, which severely impairs the driver's control and increases the risk of collisions.

50. Many purchasers and lessees of the Class Vehicles have experienced the Stalling Defect. Complaints filed by consumers with NHTSA demonstrate that the defect is widespread and dangerous and that it manifests without warning. The complaints also indicate FCA's awareness of the Stalling Defect and the dangerous conditions it creates. The following are a sampling of some complaints relating to the Stalling Defect and safety (spelling and grammar mistakes remain as found in the original) (Safercar.gov, *Search for Safety Issues* (December 27, 2017), http://www.odi.nhtsa.dot.gov/owners/SearchSafetyIssues/):

    a. (March 28, 2017) NHTSA ID No. 10968929: AFTER PLACING THE VEHICLE IN REVERSE AND APPLYING GAS THE VEHICLE WILL START TO REVERSE AS INTENDED. HOWEVER, AFTER MOVING SEVERAL FEET THE TRANSMISSION COMPLETELY FAILS AND THE VEHICLE DOES NOT RESPOND TO ADDED PRESSURE FROM THE GAS PEDAL. IT'S AS IF THE TRANSMISSION SHIFTS TO NEUTRAL ON ITS OWN AND THE ENGINE REVS ITS RPMS WITH NO RESULT.

---

[19] *See, e.g.*, Cohen, Center for Auto Safety NHTSA Petition, *supra*, at 2.

THIS HAS HAPPENED AT LEAST 3 TIMES ON A SLIGHT INCLINE AND THE VEHICLE BEGINS TO ROLL UNCONTROLLABLY. IT CREATES MOMENTS OF CONFUSION FOR THE DRIVER SINCE THEY BELIEVE THEY SHOULD BE MOVING BACKWARDS IN REVERSE BUT THE TRANSMISSION LETS GO AND STARTS TO ACTUALLY ROLL FORWARDS. THIS HAS HAPPENED AT HOME IN THE DRIVE WAY AS WELL AS IN A PUBLIC PARKING LOT. AFTER THE SCENARIO HAPPENS, THE R ON THE SHIFTER BLINKS UNCONTROLLABLY. THE ONLY WAY TO RESET THE CAR IS TO TURN IT OFF AND RESTART IT. AT THAT POINT IT APPEARS THE TRANSMISSION RE-ENGAGES.

b. (May 11, 2017) NHTSA ID No. 10984984: TL* THE CONTACT OWNS A 2017 CHRYSLER PACIFICA. WHILE ATTEMPTING TO ACCELERATE FROM A RED LIGHT, THE VEHICLE FAILED TO ACCELERATE AND THE ONBOARD COMPUTER DISPLAYED A TRANSMISSION CODE. THE VEHICLE WAS TAKEN TO A DEALER. THE MECHANIC STATED THAT THERE WAS NO TRANSMISSION CODE AND THAT THE FAILURE WAS DUE TO THE CONTACT FUELING THE VEHICLE WHILE THE ENGINE WAS RUNNING. WHILE THE CONTACT WAS TURNING LEFT AT AN INTERSECTION AT 10 MPH, THE VEHICLE FAILED TO ACCELERATE AGAIN AND STOPPED IN THE MIDDLE OF THE INTERSECTION. AFTER 5-6 SECONDS, THE VEHICLE JERKED FORWARD AND ACCELERATED AS THE CHECK ENGINE INDICATOR ILLUMINATED. THE VEHICLE WAS TAKEN TO THE DEALER AGAIN, BUT WAS NOT DIAGNOSED OR REPAIRED. THE FAILURE OCCURRED FOUR TIMES. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURES. THE APPROXIMATE FAILURE MILEAGE WAS 7,000.

c. (May 23, 2017) NHTSA ID No. 10991282: VEHICLE STOP RUNNING RANDOMLY.

STOPPED RUNNING WHILE ON ROAD.

HOW TO COMPLETELY STOP PUT IN PARK TO RESTART PERIOD SAFETY ISSUE BIG TIME

d. (May 23, 2017) NHTSA ID No. 10991298: WHILE DRIVING ON A BUSY STREET, MY 2017 CHRYSLER PACIFICA SUDDENLY LOST THE ABILITY TO ACCELERATE. I WAS IN AN INTERSECTION PUMPING THE GAS PEDAL WITH NOTHING HAPPENING. THE WARNING MESSAGE ON THE DASH READ "SHIFT VEHICLE TO PARK" (OR SIMILAR). I COASTED TO A STOP WITH CARS NEARLY MISSING ME, SHIFTED TO PARK, TURNED THE CAR OFF, THEN TURNED IT BACK ON, SHIFTED TO DRIVE AND PULLED DIRECTLY INTO A PARKING LOT. I CALLED CHRYSLER ROADSIDE AND

WAS TOWED TO THE DEALERSHIP WHERE MY CAR IS NOW. ACCORDING TO WHAT I'M SEEING ON CHRYSLER FORUMS, THIS IS BEGINNING TO HAPPEN ACROSS THE COUNTRY & CHRYSLER IS NOT ADDRESSING THIS EXTREMELY SERIOUS SITUATION. THANK YOU FOR YOUR TIME AND I LOOK FORWARD TO A RESPONSE.

e. (June 2, 2017) NHTSA ID No. 11012731: WHILE STOPPED, THE VEHICLE LOST POWER AND DISPLAYED A MESSAGE "VEHICLE MUST BE IN PARK TO SHIFT" OR SOMETHING ALONG THOSE LINES. LUCKILY THE VEHICLE WAS STOPPED AND NOT MOVING WHEN IT LOST POWER. THIS IS VERY SERIOUS BECAUSE ALL PROPULSION FROM THE VEHICLE WAS LOST. THE CAR DID RESTART AFTER IT WAS SHIFTED INTO P AND THE START BUTTON WAS PUSHED (WITH A FOOT ON THE BRAKE). CHRYSLER HAS KNOWN ABOUT THIS ISSUE FOR MONTHS NOW VIA THE ONLINE FORUM DISCUSSING THE ISSUE AND APPEARS TO BE DOING NOTHING ABOUT IT PROACTIVELY AND IS CERTAINLY NOT COMMUNICATING ABOUT THE ISSUE WITH ITS CUSTOMERS. ....UPDATED 11/03/17 *BF

UPDATED 11/07/2017*JS

f. (June 8, 2017) NHTSA ID No. 10993974: TRANSMISSION FAILED ON US 3 TIMES. FIRST WAS BACKING OUT OF A PARKING SPOT, TOTALLY LOCKED UP FOR 15 MINUTES. RESET AND RAN FINE. NEXT, WITH WIFE AND 3 KIDS IN THE VAN, TRANSMISSION LOCKED UP AT 45 MILES PER HOUR ALMOST CAUSING HER TO CRASH AND GET HIT. ALL LIGHTS CAME ON AND ELECTRONIC PARKING BRAKE ENGAGED. DEALERSHIP TOOK 2 WEEKS TO FIX AND SAID IT WAS FINE. NEXT, I WAS DRIVING AT 55 MPH AND TRANSMISSION LOCKED UP. ALMOST DIED. NO A/A BY THE GRACE OF GOD. ALL LIGHTS CAME ON AND PARKING BRAKE ENGAGED AGAIN. NOW, CHRYSLER IS REPLACING THE ENTIRE TRANSMISSION. WE WON'T TAKE IT BACK. FAMILY ALMOST DIED TWICE...UPDATED 07/20/17 *BF

g. (June 30, 2017) NHTSA ID No. 11011729: I WAS DRIVING ON A HIGHWAY (WITH MY KIDS IN THE BACKSEATS) AND SUDDENLY (FOR NO REASON) THE VEHICLE LOST ALL ELECTRICITY (INCLUDING, POWER STEERING, ENGINE, HEADLIGHTS, DASHBOARD LIGHTING). THE DASHBOARD ONLY SAID "PUT CAR INTO PARK AND RESTART." THANKFULLY, I WAS ABLE TO PULL OVER PARTIALLY ONTO THE SIDE AND RESTART THE CAR AFTER IT WAS IN PARK. (THIS HAPPENED A SECOND TIME A FEW MINUTES LATER BUT IN THAT CASE THE ELECTRICITY CAME

CLASS ACTION COMPLAINT

BACK ON ITSELF AFTER A FEW MOMENTS.) THIS WAS A SCARY AND DANGEROUS EXPERIENCE.....UPDATED 11/03/17 *BF

UPDATED 11/09/2017*JS

h. (July 17, 2017) NHTSA ID No. 1011395 WHILE DRIVING THE VEHICLE IT TURNS OFF AND COMES TO A COMPETE STOP. THE SCREEN ON THE DASH READS MUST PLACE PARK IN P TO START. I HAVE TO THEN PLACE THE CAR IN PARK TO START BACK UP AGAIN. THIS HAS HAPPENED 3 TIMES IN 3 MONTHS. THE VEHICLE LOSES ALL FORWARD MOTION AND SHUTS OFF. EVERY TIME IT HAS DONE IT IT HAS BEEN WHILE EXCELERATING FROM A STOP SIGN ON A CITY STREET. THE CAUSE OF THIS SEEMS TO BE WITH THE TRANSMISSION AS THE VEHICLE STUTTERS JUST BEFORE IT STOPS.....UPDATED 11/03/17 *BF

UPDATED 11/9/2017*JS

i. (August 2, 2017) NHTA ID No. 11051158: MY WIFE STOPPED AT AN INTERSECTION AND THE CAR COMPLETELY SHUTOFF. A MESSAGE APPEARED STATING PLEASE PUT CAR IN PARK TO START VEHICLE. IT HAPPENED WITHIN TWO WEEKS OF PURCHASING THE VEHICLE, AROUND 300 MILES DRIVEN. WE ARE CONCERNED TO DRIVE IT AS WE HAVE THREE SMALL CHILDREN. I TOOK IT BACK TO THE DEALER AND THEY COULDN'T REPRODUCE IT AND REFUSED TO TAKE THE CAR BACK. I CONTACTED CHRYSLER AND THEY SAID THEY WOULD NEED TO REPRODUCE IT SO WAIT UNTIL IT HAPPENED AGAIN. THIS IS UNSATISFACTORY TO ME AS IT IS PUTTING MY FAMILY AT RISK. IT APPEARS THEY ARE WAITING FOR SOMEONE TO DIE TO DEAL WITH THE ISSUE. AND EVEN AT THAT DEAD MEN TELL NO TAILS, SO THEY PROBABLY WOULDN'T BE ABLE TO ATTRIBUTE THE ACCIDENT TO THIS STALLING ISSUE, AND NOTHING WILL BE ADDRESSED. THIS NEEDS TO BE RECALLED OR VEHICLES DISPLAYING THIS ISSUE SWAPPED OUT.

j. (August 10, 2017) NHTSA ID No. 11048090: MY CAR ON OCCASION HAD BEEN FEELING LIKE IT WAS CUTTING OUT, I THOUGHT I GOT SOME BAD GAS SO I SWITCHED STATIONS AND NOTICED IT LESS. THEN ABOUT A MONTH LATER, IT JUST TURNED OFF IN ROUTE. I WAS AT A FOUR WAY STOP ACCELERATED TO GO AND IT STARTED OUT, I MADE IT INTO THE MIDDLE OF THE INTERSECTION AND THE CAR TURNED OFF. IT GAVE A NOTICE BY STEERING COLUMN THAT IT NEEDS TO BE IN PARK TO START ENGINE OR SOMETHING. IT DID IT WITH ABOUT

CLASS ACTION COMPLAINT

13,000 MILES ON IT. I WAS ABLE TO START THE VAN AFTER I PUT IT IN PARK WITH FOOT ON BRAKE AND CONTINUE ON. IT HAPPENED SO FAST I WAS NOT SURE WHAT WENT WRONG? NOW I READ THAT MANY HAVE HAD THIS HAPPEN AS WELL. I AM FEARFUL NOW IT WILL HAPPEN WHEN I AM GOING HIGHER SPEEDS, ETC. THIS NEEDS TO BE FIXED!

k.  (September 7, 2017) NHTSA ID No. 11025266: 2017 PACIFICA TOURING-L ENGINE SHUTDOWN COMPLETELY WHEN DRIVING AT ABOUT 35-40 MPH ON A CITY STREET WHEN I SLOWED DOWN FROM 45 MPH. THE VAN IS LESS THAN A YEAR OLD AND HAS ABOUT 10000 MILES ON IT. SCREEN DISPLAYED MESSAGE 'SHIFT TO PARK AND RESTART VEHICLE'. I TRIED RESTARTING WITHOUT STOPPING THE CAR AS THERE WERE CARS BEHIND ME AND I SAW THE MESSAGE "TOO FAST TO SHIFT TO PARK" AND THE POWER STEERING WAS ALSO CUT OFF BECAUSE IT IS ELECTRONIC. I HAD TO PARK ON THE SHOULDER AND RESTART AFTER A COMPLETE STOP.

CONTACTED MY CHRYSLER DEALER AND HE TOLD ME THAT UNLESS THERE IS A CODE NO DIAGNOSIS IS POSSIBLE. I'VE DROPPED MY CAR TODAY MORNING - NO UPDATES AS YET. UPDATED 10/25/17 *BF

UPDATED 10/27/2017*JS UPDATED 12/04/17*BF

l.  (October 6, 2017) NHTSA ID No. 1132132: CAR SHUTS OFF WHILE DRIVING. WARNINGS TO PUT THE CAR IN PARK AND ELECTRONIC STABILITY ISSUES MAY POP UP. THE ENGINE MAKES A WEIRD NOISE AND THE CAR WILL OFTEN NOT SHIFT TO PARK TO RESTART. THIS HAS OCCURRED THREE SEPARATE OCCASIONS FOR ME. EACH TIME I WAS LUCKILY DRIVING SLOWLY PRIOR TO A TURN. I HAVE BROUGHT THE CAR TO THE DEALER EACH TIME. THEY HAVE TRIED REPLACING THE SHIFTER, UPDATED THE COMPUTER SYSTEM AND CLEARED ERROR CODES. NOTHING WORKS. THIS IS A HUGE SAFETY ISSUE FOR OUR FAMILY AND THEY JUST KEEP RETURNING THE CAR TO ME.

m. (October 23, 2017) NHTSA ID No. 11040294: WHILE DRIVING, THE ENGINE STOPS AND THE DASHBOARD AND SHIFTER LIGHTS START BLINKING. THE MESSAGE "VEHICLE MUST BE IN PARK TO SHIFT GEARS" DISPLAYS ON THE DASHBOARD. THIS IS INCREDIBLY DANGEROUS AND HAS HAPPENED 3 TIMES NOW. OUR FAMILY WAS ALMOST STRUCK BY ONCOMING TRAFFIC. UPDATED 11/9/2017*JS

n.  (November 18, 2017) NHTSA ID No. 11051390: WHILE

CLASS ACTION COMPLAINT

DRIVING WITH MY FAMILY, INCLUDING THREE SMALL CHILDREN, THE VEHICLE SHUT ITSELF OFF. NO ELECTRICAL, POWER STEERING, POWER BRAKES OR ENGINE. I WAS ABLE TO GET IT STARTED AGAIN AFTER COMING TO A STOP. AFTERWARDS THE SCREEN SAID THAT THE START/STOP SYSTEM WAS DISABLED.

o. (November 25, 2017) NHTSA ID No. 11053322: CAR, WITH NO WARNING, LOST ALL ACCELERATION WHILE DRIVING APPROXIMATELY 35 MPH AND FLASHED SEVERAL WARNING LIGHTS ON DASHBOARD INCLUDING ELECTRONIC STABILITY CONTROL, FORWARD COLLISION WARNING, SERVICE FORWARD COLLISION WARNING, AND ELECTRONIC PARK BRAKE FAILURE. IN ADDITION, THE SHIFTER KNOB LIGHT BLINKS AND SWITCHES TO 'P'. AT THAT POINT, I CAN ONLY DRIFT THE CAR TO A STOP. IN MY CASE I WAS ABLE TO TURN THE CAR OFF, THEN RESTART IT AND THE ISSUE DID NOT OCCUR AGAIN FOR ANOTHER 4 DAYS. AFTER 4 DAYS, THE EXACT SAME THING HAPPENED, THIS TIME WHILE I WAS STOPPED AT A RED LIGHT. TOOK THE CAR IN FOR SERVICE AND WAS TOLD THEY PERFORMED A SOFTWARE UPDATE ON THE TRANSMISSION AND THE CAR WAS FIXED. I GOT ABOUT 1 MILE FROM THE DEALER AND THE EXACT SAME THING HAPPENED WHILE DRIVING AT APPROXIMATELY 30 MILES PER HOUR. DROVE CAR BACK TO THE DEALER AND THEY HAVE THE CAR NOW AGAIN TRYING TO FIGURE OUT WHAT IS WRONG.

p. (December 8, 2017) NHTSA ID No. 11053553: CAR SHUT OFF DURING DRIVING AND TOLD ME TO SHIFT INTO PARK AND THEN RESTARTED AND TOOK OFF FAST FOR A FEW FEET

q. (December 21, 2017) NHTSA ID No. 11056049: WE PURCHASED A PACIFICA ON 12/21/2017. NOT EVEN AN HOUR AFTER LEAVING THE DEALERSHIP THE VEHICLE STALLED, LOSING ALL POWER, AND HAD TO BE RESTARTED TO REGAIN POWER AND DRIVING ABILITY AT A STOP LIGHT. WE WERE NOT HIT, BUT IT IS VERY DANGEROUS TO HAVE A VEHICLE THAT STALLS RANDOMLY.

51.   Complaints posted informally by consumers in forums online further demonstrate that the defect is widespread and dangerous and that it manifests without warning.  The complaints also indicate FCA's awareness of the Stalling Defect and its safety risks.  The following are a small sampling of complaints relating to the Stalling Defect (spelling and grammar mistakes remain as found

in the original) (Pacifica Forums, http://www.pacificaforums.com/forum/474-chrysler-pacifica-minivan-issues-problems/2937-vehicle-shut-off-while-driving-4.html (last visited Dec. 27, 2017))

    a. Posted on September 6, 2016 by laprincipessa: hi, I haven't seen any posts on this yet, but the other day while I was driving, my pacifica's engineturned off WHILE I WAS MOVING. I had no warning, just that it stopped accelerating and the screen said that car must be in park to put it in drive. Thankfully I had just turned onto a residential street, however, due to the steering being electronic, I had lost the power steering. I had to coast to a stop, then put it in park and press the on button with foot on brake like normal starting. The more I think about this, the more scared I am to drive the van! What if it had happened anywhere else! I had an appointment at the dealer the next morning already, so I told the tech what had happened. They checked the car and it didn't have any codes on it. As if it never happened. I am not sure what to do at this point, I'm really nervous about driving it. The tech couldn't tell me anything. I didn't have any warning, and nothing weird happened with the vehicle before the shut off of the engine. The tech checked to see if my car needed a software update to fix the problem and there was none. My thought was that if a car needed a software update to not shut off randomly while in operation, maybe you shouldn't be selling the dang car!!! Any advice/suggestions? I've never had an issue like this before!

    b. Posted on November 3, 2016 by ChryslerCares, in response to a post by Jtravis410: I have noticed several times, whether I'm going 5 mph or 30 mph, that when I am accelerating it starts to feel like the van wants to stall out and I have noticed at the times it's happening the RPM's rev normal then start to jump really low then back to normal then really low and so forth until I come to a complete stop and accelerate again and it seems to go away. Another thing I just started to notice is that after putting the van in park on a flat serviceit rolls forward or backward, from whichever direction I was going, about a foot sometimes more before stopping.
Anyone notice these issues before

Hi Jtravis410,

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Feel free to reach out if I can assist you in locating or making an appointment at a <u>certified dealer</u>for a diagnosis of your vehicle. I am happy to follow up for you. You are also welcome to visit the <u>Chrysler</u> website to locate a local dealer <u>Find a Dealer | Chrysler Dealer Locator by Zip Code | Chrysler</u>

Anna
ChryslerCares Social Media Specialist

52.   In fact, FCA had notice of the Stalling Defect in the Class Vehicles at least since March 2016, when consumers began posting complaints publicly online (spelling and grammar mistakes remain as found in the original) (Car Problem Zoo, http://www.carproblemzoo.com/chrysler/pacifica/ (last visited Dec. 29, 2017))

a.  "Car Stall Problems of the 2017 Chrysler Pacifica," Failure Date 6/1/16: The contact owns a 2017 Chrysler Pacifica. While driving 35 mph, the vehicle stalled without warning and the "shift to park" error message displayed. The contact stated that the vehicle lost power completely, but was able to be restarted by shifting to park. In addition, on several occasions, the vehicle hesitated to accelerate and lurched forward while the accelerator pedal was depressed. Heggs Chrysler in masa, arizona reprogrammed the computer and replaced the accelerator pedal sensor, but the failure recurred. The dealer stated that the failure could not be duplicated. The manufacturer was made aware of the failure. The failure mileage was approximately 11,000. The VIN was not available.

b.  "Engine Stall Problems of Chrysler Pacifica" Failure Date 5/21/17: Purchased a brand new Chrysler Pacifica vehicle 3 wks ago on may 18 2017. We headed out on vacation on the 20th of may. May 21 was the first incident on the interstate in chicago we stalled in the middle of traffic for approximately 10 minutes. May 27 we pulled up to a stoplight and the engine stalled out on us that lasted approximately 3 minutes, the same day at a tollbooth we stalled out which lasted about 25 minutes before the car would start again we ended up calling for a towing service but the car we started and we canceled the tow service. May 30 we left the grocery store the screen switch to the app page and would not

CLASS ACTION COMPLAINT

switch back, the brakes locked and we lost engine power. That lasted 20 mins before car would start. June 7 car would not start after coming out of the grocery store waited 20 minutes then tried again car started 30 seconds after the ignition button has been pressed by itself. June 11 car stalled out pulling into the driveway. Took less then a minute to restart this time. We have taken the car into the dealer and the could find nothing and could not replicate. We now have to drive back from PA to nd with a vehicle I am afraid to drive with 6 kids. I am so upset and disappointed in this Chrysler product.

    c.  "Car Stall Problems of Chrysler Pacifica," Failure Date: 5/6/17: New 2017 Chrysler Pacifica hybrid with 270 miles stalled on a busy intersection and won't turn on. The vehicle was in motion when it lost power and came to a complete stop. The engine sign is on and message says "press brake to prevent rollong". Turning off and turning the it back on does not make the issue go away.

53.    The Stalling Defect poses an unreasonable safety risk for Class Members and everyone sharing the road with them by increasing the risk of accidents.

## FCA Had Exclusive Knowledge of the Stalling Defect

54.    FCA had superior and exclusive knowledge of the Stalling Defect and knew or should have known that the defect was not known to or reasonably discoverable by Plaintiffs and Class Members before they purchased or leased the Class Vehicles.

55.    As discussed above, Plaintiffs are informed and believe and based thereon allege that before Plaintiffs purchased their Class Vehicle, and since at least June 2016, Defendant knew or should have known, based on FCA's routine monitoring of complaints, that the Class Vehicles had a dangerous design defect that adversely affects their drivability.[20]

56.    Additionally, FCA knew or should have known about the Stalling

---

[20] Boudette, "Chrysler Pacifica Owners Say Minivans Suddenly Shut Off," *supra*.

Defect through sources not available to consumers, including FCA's own aggregate pre-market data and other aggregate post-market data from FCA-authorized dealers.

57. The existence of the Stalling Defect is a material fact that a reasonable consumer would consider when deciding whether to purchase or lease a Class Vehicle.  Had they known that the Class Vehicles were defective, Plaintiffs and other Class Members would not have purchased or leased the Class Vehicles or would have paid less for them.

58. Reasonable consumers, like Plaintiffs, expect that the vehicles will be safe and free of defects. Plaintiffs and Class Members further reasonably expect that FCA will not sell or lease vehicles with known safety-related defects, such as the Stalling Defect, and will disclose any such defects to its consumers when it learns of them. Plaintiffs and Class Members did not expect FCA to fail to disclose and continually deny the Stalling Defect.

**FCA Has Actively Concealed the Stalling Defect**

59. While it has been fully aware of the Stalling Defect in the Class Vehicles, FCA actively concealed the existence and nature of the alleged defect from Plaintiffs and Class Members at the time of purchase, lease, or repair and thereafter. Specifically, FCA failed to disclose or actively concealed at and after the time of purchase, lease, or repair:

> (a)  any and all known material defects or material nonconformity of the Class Vehicles, including the Stalling Defect;
>
> (b)  that the Class Vehicles, were not in good in working order, were defective, and were not fit for their intended purposes; and
>
> (c)  that the Class Vehicles were defective, despite FCA's knowledge of such defects since at least June 2016 through

alarming failure rates, customer complaints, and other internal sources.

60.    FCA was inundated with complaints regarding the 9-Speed 948TE FWD Automatic Transmission, including the Stalling Defect.

61.    When consumers present the Class Vehicles to an authorized FCA dealer for repair of the Stalling System, rather than repair the problem under warranty, FCA dealers either inform consumers that their vehicles are functioning properly or conduct repairs that merely mask the defect. For example, Plaintiffs were told by FCA and its dealership both that the vehicles were operating as intended and that no faults were found.

62.    FCA has still not modified or redesigned any of the defective components that cause the Stalling Defect.

## CLASS ACTION ALLEGATIONS

63.    Plaintiffs bring this lawsuit as a class action on behalf of themselves and all others similarly situated as members of the proposed Class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

64.    The Class and Sub-Class are defined as:

**Nationwide Class**:  All individuals in the United States who purchased or leased any 2016 to 2017 Chrysler Pacific from an authorized FCA dealer (the "Nationwide Class" or "Class").

**California Sub-Class**:  All members of the Nationwide Class who reside in the State of California.

**CLRA Sub-Class**:  All members of the California Sub-Class who are "consumers" within the meaning of California Civil Code § 1761(d).

**Implied Warranty Sub-Class**:  All members of the Nationwide Class who purchased or leased their vehicles

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

in the State of California.

65.    Excluded from the Class and Sub-Classes are: (1) Defendant, any entity or division in which Defendant has a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; and (3) those persons who have suffered personal injuries as a result of the facts alleged herein.  Plaintiffs reserve the right to amend the Class and Sub-Class definitions if discovery and further investigation reveal that the Class and Sub-Class should be expanded or otherwise modified.

66.    Numerosity:  Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable.  The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court.  The Class Members are readily identifiable from information and records in Defendant's possession, custody, or control, as well as from records kept by the Department of Motor Vehicles.

67.    Typicality:  Plaintiffs' claims are typical of the claims of the Class in that Plaintiffs, like all Class Members, purchased or leased a Class Vehicle designed, manufactured, and distributed by FCA.  The representative Plaintiffs, like all Class Members, have been damaged by Defendant's misconduct in that they purchased a vehicle they would not have purchased or would have paid less for. Furthermore, the factual bases of FCA's misconduct are common to all Class Members and represent a common thread resulting in injury to all Class Members.

68.    Commonality:  There are numerous questions of law and fact common to Plaintiffs and the Class that predominate over any question affecting only individual Class Members.  These common legal and factual issues include

the following:

      (a)   Whether Class Vehicles suffer from defects relating to the Stalling Defect;

      (b)   Whether the symptoms of the Stalling Defect constitute an unreasonable safety risk;

      (c)   Whether Defendant knows about the Stalling Defect and, if so, how long Defendant has known of the defect and its symptoms;

      (d)   Whether the defective nature of the Class Vehicles constitutes a material fact;

      (e)   Whether Defendant has a duty to disclose the defective nature of the Class Vehicles to Plaintiffs and Class Members;

      (f)   Whether Plaintiffs and the other Class Members are entitled to equitable relief, including a preliminary and/or permanent injunction;

      (g)   Whether Defendant knew or reasonably should have known of the Stalling Defect before it sold and leased Class Vehicles to Class Members;

      (h)   Whether Defendant should be declared financially responsible for notifying all Class Members of the problems with the Class Vehicles and for the costs and expenses of repairing the Stalling Defect;

      (i)   Whether Defendant is obligated to inform Class Members of their right to seek reimbursement for having paid to diagnose or repair the Stalling Defect;

      (j)   Whether Defendant breached the implied warranty of merchantability pursuant to the Magnuson-Moss Act; and

CLASS ACTION COMPLAINT

(k)     Whether Defendant breached the implied warranty of merchantability pursuant to the Song-Beverly Act;

69.     <u>Adequate Representation</u>:  Plaintiffs will fairly and adequately protect the interests of the Class.  Plaintiffs have retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiffs intend to prosecute this action vigorously.

70.     <u>Predominance and Superiority</u>:  Plaintiffs and Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.  It is likely that only a few Class Members could afford to seek legal redress for Defendant's misconduct.  Absent a class action, Class Members will continue to incur damages, and Defendant's misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants, and will promote consistency and efficiency of adjudication.

# FIRST CAUSE OF ACTION

## (Violation of California's Consumers Legal Remedies Act, California Civil Code § 1750, *et seq*.)

71.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

72.     Plaintiffs bring this cause of action on behalf of themselves and the Nationwide Class, or, in the alternative, the CLRA Sub-Class.

73.     Defendant is a "person" as defined by California Civil Code

§ 1761(c).

74.     Plaintiffs and CLRA Sub-class Members are "consumers" within the meaning of California Civil Code § 1761(d) because they purchased their Class Vehicles primarily for personal, family, or household use.

75.     By failing to disclose the Stalling Defect and concealing it from Plaintiffs and Class Members, Defendant violated California Civil Code § 1770(a), as it represented that the Class Vehicles had characteristics and benefits that they do not have, and represented that the Class Vehicles were of a particular standard, quality, or grade when they were of another. *See* Cal. Civ. Code §§ 1770(a)(5) & (7).

76.     Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

77.     Defendant knew that the Class Vehicles suffered from an inherent defect, were defectively designed, and were not suitable for their intended use.

78.     As a result of their reliance on Defendant's omissions, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles.

79.     Defendant was under a duty to Plaintiffs and Class Members to disclose the Stalling Defect and/or the associated repair costs because:

        (a)     Defendant was in a superior position to know the true state of facts about the safety-related Stalling Defect in the Class Vehicles;

        (b)     Plaintiffs and Class Members could not reasonably have been expected to learn or discover that their Class Vehicles had a dangerous defect until it manifested; and

(c) Defendant knew that Plaintiffs and Class Members could not reasonably have been expected to learn of or discover the safety-related defect.

80.     In failing to disclose the defective nature of the Class Vehicles, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so.

81.     The facts Defendant concealed from or failed to disclose to Plaintiffs and Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay less.  Had they known that the Class Vehicles were defective, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles or would have paid less for them.

82.     Plaintiffs and Class Members are reasonable consumers who do not expect the Class Vehicles to shut down or stall while at speed without warning. This is the reasonable and objective consumer expectation relating to vehicles.

83.     As a result of Defendant's conduct, Plaintiffs and Class Members were harmed and suffered actual damages in that, on information and belief, the Class Vehicles experienced and will continue to experience problems such as the vehicles dangerously stalling at speed.

84.     As a direct and proximate result of Defendant's unfair or deceptive acts or practices, Plaintiffs and Class Members suffered and will continue to suffer actual damages.

85.     Plaintiffs and the Class are entitled to equitable relief.

86.     Plaintiffs provided Defendant with notice of its violations of the CLRA pursuant to California Civil Code § 1782(a).  If Defendant fails to provide appropriate relief for their violations of the CLRA within 30 days, Plaintiffs will seek monetary, compensatory, and punitive damages, in addition to the

CLASS ACTION COMPLAINT

1    injunctive and equitable relief they seek now.

2    **SECOND CAUSE OF ACTION**

3    **(Violation of California Business & Professions Code § 17200, *et seq.*)**

4        87.    Plaintiffs incorporate by reference the allegations contained in the

5    preceding paragraphs of this Complaint.

6        88.    Plaintiffs bring this cause of action on behalf of themselves and the

7    Nationwide class, or, in the alternative, the California Sub-Class.

8        89.    As a result of their reliance on Defendant's omissions, owners

9    and/or lessees of the Class Vehicles suffered an ascertainable loss of money,

10   property, and/or value of their Class Vehicles.

11       90.    California Business & Professions Code § 17200 prohibits acts of

12   "unfair competition," including any "unlawful, unfair or fraudulent business act

13   or practice" and "unfair, deceptive, untrue or misleading advertising."

14       91.    Plaintiffs and Class Members are reasonable consumers who do not

15   expect their Class Vehicles to exhibit problems such as stalling at speed without

16   warning.

17       92.    Defendant knew the Class Vehicles suffered from inherent defects,

18   were defectively designed or manufactured, would fail prematurely, and were not

19   suitable for their intended use.

20       93.    In failing to disclose the Stalling Defect, Defendant has knowingly

21   and intentionally concealed material facts and breached its duty not to do so.

22       94.    Defendant was under a duty to Plaintiffs and Class Members to

23   disclose the defective nature of the Class Vehicles:

24           (a)    Defendant was in a superior position to know the true state of

25                  facts about the safety-related defect in the Class Vehicles;

26           (b)    Defendant made partial disclosures about the quality of the

27                  Class Vehicles without revealing their defective nature; and

28

(c)     Defendant actively concealed the defective nature of the Class Vehicles from Plaintiffs and the Class.

95.     The facts Defendant concealed from or failed to disclose to Plaintiffs and Class Members are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease Class Vehicles. Had they known that the Class Vehicles were defective and posed a safety hazard, then Plaintiffs and the other Class Members would not have purchased or leased Class Vehicles or would have paid less for them.

96.     Defendant continued to conceal the defective nature of the Class Vehicles after Class Members began to report problems.  Indeed, Defendant continues to cover up and conceal the true nature of the Stalling Defect.

97.     Defendant's conduct was and is likely to deceive consumers.

98.     Defendant's acts, conduct and practices were unlawful, in that they constituted:

(a)     Violations of California's Consumers Legal Remedies Act;

(b)     Violations of the Song-Beverly Consumer Warranty Act;

(c)     Violations of the Magnuson-Moss Warranty Act.

99.     By its conduct, Defendant has engaged in unfair competition and unlawful, unfair, and fraudulent business practices.

100.    Defendant's unfair or deceptive acts or practices occurred repeatedly in Defendant's trade or business, and were capable of deceiving a substantial portion of the purchasing public.

101.    As a direct and proximate result of Defendant's unfair and deceptive practices, Plaintiffs and the Class have suffered and will continue to suffer actual damages.

102.    Defendant has been unjustly enriched and should be required to make restitution to Plaintiffs and the Class pursuant to §§ 17203 and 17204 of

the Business & Professions Code.

## THIRD CAUSE OF ACTION

### (Breach of Implied Warranty Pursuant to Song-Beverly
### Consumer Warranty Act, California Civil Code §§ 1792 and 1791.1, *et seq.*)

103.   Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

104.   Plaintiffs bring this cause of action against Defendant on behalf of themselves and the Implied Warranty Sub-Class.

105.   Defendant was at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles.  Defendant knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

106.   Defendant provided Plaintiffs and Class Members with an implied warranty that the Class Vehicles and their component parts are merchantable and fit for the ordinary purposes for which they were sold.  However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because, *inter alia*, the Class Vehicles suffered from an inherent defect at the time of sale and thereafter.

107.   Defendant impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use.  This implied warranty included, among other things: (i) a warranty that the Class Vehicles manufactured, supplied, distributed, and/or sold by FCA were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles would be fit for their intended use while being operated.

108.   Contrary to the applicable implied warranties, the Class Vehicles at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and Class Members with reliable, durable, and safe transportation.  Instead, the Class Vehicles are defective.

109.   The Stalling Defect is inherent in each Class Vehicle and was present in each Class Vehicle at the time of sale.

110.   As a result of Defendant's breach of the applicable implied warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles.

111.   Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of California Civil Code §§ 1792 and 1791.1.

**FOURTH CAUSE OF ACTION**

**(Breach of Implied Warranty under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2303 *et seq.*)**

112.   Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

113.   Plaintiffs bring this cause of action on behalf of themselves and the Nationwide Class, or, in the alternative, the California Sub-Class, against Defendant.

114.   The Class Vehicles are a "consumer product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

115.   Plaintiffs and Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

116.   Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

117.   Each Class Vehicle is accompanied by FCA's 3 year/ 36,000 miles basic warranty and 5 year/ 60,000 miles powertrain warranty.

118.   FCA impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use.  This implied warranty included, among other things: (i) a warranty that the Class Vehicles manufactured,

CLASS ACTION COMPLAINT

supplied, distributed, and/or sold by FCA were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles would be fit for their intended use while being operated.

119.   Contrary to the applicable implied warranties, the Class Vehicles at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and Class Members with reliable, durable, and safe transportation.  Instead, the Class Vehicles are defective.

120.   Defendant's breach of implied warranties has deprived Plaintiffs and Class Members of the benefit of their bargain.

121.   The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum or value of $25,000.  In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed based on all claims to be determined in this suit.

122.   Defendant has been afforded a reasonable opportunity to cure its breach, including when Plaintiffs and Class Members brought their vehicles in for diagnoses and repair of the Stalling Defect.

123.   As a direct and proximate cause of Defendant's breach of implied warranties, Plaintiffs and Class Members sustained damages and other losses in an amount to be determined at trial.  Defendant's conduct damaged Plaintiffs and Class Members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, attorneys' fees, and/or other relief as appropriate.

124.   As a result of Defendant's violations of the Magnuson-Moss Warranty Act as alleged herein Plaintiffs and Class Members have incurred damages.

CLASS ACTION COMPLAINT

## FIFTH CAUSE OF ACTION

### (For Unjust Enrichment)

125.   Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

126.   Plaintiffs bring this cause of action on behalf of themselves and the Nationwide Class against Defendant.

127.   As a direct and proximate result of Defendant's failure to disclose a known defect, Defendant has profited through the sale and lease of the Class Vehicles.  Although these vehicles are purchased through Defendant's agents, the money from the vehicle sales flows directly back to Defendant.

128.   Additionally, as a direct and proximate result of Defendant's failure to disclose a known defect in the Class Vehicles, Plaintiffs and Class Members have vehicles that require repeated, high-cost repairs that can and therefore have conferred an unjust substantial benefit upon Defendant at Class Members' expense.

129.   Defendant has therefore been unjustly enriched due to the Stalling Defect in the Class Vehicles through the use of funds that earned interest or otherwise added to Defendant's profits when said money should have remained with Plaintiffs and Class Members.

130.   As a result of the Defendant's unjust enrichment, Plaintiffs and Class Members have suffered damages.

## RELIEF REQUESTED

131.   Plaintiffs, on behalf of themselves and all others similarly situated, request the Court to enter judgment against Defendant, as follows:

    (a)  An order certifying the proposed Class and Sub-Classes, designating Plaintiffs as named representative of the Class and designating the undersigned as Class Counsel;

CLASS ACTION COMPLAINT

(a)  A declaration that Defendant is financially responsible for notifying all Class Members about the defective nature of the Class Vehicles;

(b)  An order enjoining Defendant from further deceptive distribution, sales, and lease practices with respect to Class Vehicles; declaring that the Stalling Defect is safety-related; compelling Defendant to remove, repair, and/or replace the Class Vehicles' with suitable alternative product(s) that do not contain the defects alleged herein; enjoining Defendant from selling the Class Vehicles with the misleading information; and/or compelling Defendant to reform its warranty, in a manner deemed to be appropriate by the Court, to cover the injury alleged and to notify all Class Members that such warranty has been reformed;

(c)  A declaration requiring Defendant to comply with the various provisions of the Song-Beverly Act alleged herein and to make all the required disclosures;

(d)  An award to Plaintiffs and the Class for compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial, except at this time Plaintiff does not pray for any monetary damages as a result of Defendant's violation of the CLRA;

(e)  Any and all remedies provided pursuant to the Song-Beverly Act, including California Civil Code section 1794;

(f)  Any and all remedies provided pursuant to the Magnuson-Moss Warranty Act;

(g)  A declaration that Defendant must disgorge, for the benefit of

CLASS ACTION COMPLAINT

1          the Class, all or part of the ill-gotten profits it received from

2          the sale or lease of its Class Vehicles, or make full restitution

3          to Plaintiffs and Class Members;

4          (h)     An award of attorneys' fees and costs, as allowed by law;

5          (i)      An award of attorneys' fees and costs pursuant to California

6          Code of Civil Procedure § 1021.5;

7          (j)      An award of pre-judgment and post-judgment interest, as

8          provided by law;

9          (k)     Leave to amend the Complaint to conform to the evidence

10          produced at trial; and

11          (l)      Such other relief as may be appropriate under the

12          circumstances.

13                      **DEMAND FOR JURY TRIAL**

14        132.    Pursuant to Federal Rule of Civil Procedure 38(b) and Southern

15 District of California Local Rule 38.1, Plaintiffs demand a trial by jury of any

16 and all issues in this action so triable.

17

18 Dated:  December 29, 2017            Respectfully submitted,

19                                     Capstone Law APC

20

21                                     By: /s/ Jordan L. Lurie

                                        Jordan L. Lurie

22                                         Tarek H. Zohdy

                                        Cody R. Padgett

23                                         Karen L. Wallace

24                                         Attorneys for Plaintiffs

25

26

27

28