UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN and SARAH WILDIN, individually, and on behalf of a class of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>FCA US LLC, a Delaware limited liability company,<br><br>Defendant. | Case No.: 3:17cv-02594-GPC-MDD<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**<br><br>**[ECF No. 14]** |

Before the Court is Defendant FCA US LLC's motion to dismiss the complaint. (ECF No. 14.) Plaintiffs filed an opposition on May 11, 2018. (ECF No. 16.) A reply was filed on May 24, 2018. (ECF No. 18.) For the reasons set forth below, the Court DENIES the motion to dismiss.

**I.      Allegations**

Plaintiffs Ryan and Sarah Wildin (the "Wildins") assert a putative class action based on an alleged defect in the 2017-2018 Chrysler Pacifica ("Class Vehicle"). (ECF No. 13 at 1.) The operative First Amended Complaint ("FAC") alleges the following facts.

Defendant FCA designs, manufactures, markets, distributes, services, repairs, sells,

and leases the Class Vehicle. (*Id.* at 10.) The alleged defect at issue in this case (the "Stalling Defect"), which results from an error in the Class Vehicle's Powertrain Control Module ("PCM") software, causes a loss of engine timing and leads to the Class Vehicle shutting off or stalling without warning. (*Id.*) This causes "unexpected and complete shutdown[s] or stalling" and a loss of power steering, preventing "acceleration, deceleration, and steering." (*Id.* at 11.)

The FAC alleges that, as a result of Defendant's failure to disclose the defect to customers, the Wildins and Class Members have "suffered an ascertainable loss of money, property, and/or value of their Class Vehicles." (*Id.* at 31, 32.) Plaintiffs also allege that due to Defendant's failure to disclose the Stalling Defect, as well as its active concealment of the defect, Plaintiffs and Class Members have been required to incur high-cost repairs that have conferred an unjust substantial benefit upon Defendant. (*Id.*)

### A. Defendant's Software Updates

In 2016 and 2017, Defendant issued several software updates for the engine and PCM software found in the Class Vehicle. (*Id.* at 12.) On April 22, 2016, Defendant issued a Technical Service Bulletin ("TSB") altering the PCM software in the 2016 Jeep Grand Cherokee and Dodge Durango—both of which contain the same engine and PCM software as the Class Vehicle—after customers experienced an engine malfunction indicator lamp. (*Id.*) Defendant superseded this TSB on August 5, 2016, again on November 22, 2016, and once more on March 2, 2017. (*Id.*) None of these TSBs mentioned the Stalling Defect. (*See id.*)

On May 16, 2016, Defendant issued a TSB for the Class Vehicle in response to customers experiencing an engine malfunction indicator lamp. (*Id.* at 13.) Defendant superseded that TSB with another on June 17, 2016. (*Id.*) In August 2017, Defendant released a T23 software update (the "T23 Update") for both the Class Vehicle and the 2016-2017 Jeep Grand Cherokee and Dodge Durango vehicles, which again updated the PCM software to address engine malfunction lights. (*Id.*) The T23 Update identified that the old software was "operating the Exhaust Gas Recirculation valve ("EGR") with an

2

aggressive seating velocity which resulted in damage to the EGR." (*Id.*) On January 11, 2018, FCA issued Manufacture Recall No. U01 (the "U01 Recall") to address the Stalling Defect. (*Id.*) In the recall notice, however, Defendant informed customers that those who had already received the T23 software update need not receive the U01 update. (*Id.*) According to the FAC, this is because the U01 Recall is the same as the T23 Update. (*Id.*) None of Defendant's attempts to correct the Stalling Defect have been effective, and users of the Class Vehicle continue to experience the defect even after submitting their vehicles to the updates discussed above. (*Id.*)

**B. Defendant's Knowledge**

The Wildins assert that since at least March 2016, when Defendant released the Class Vehicle, Defendant knew or should have known that the Class Vehicles and the PCM software contained this defect. (*Id.* at 4.) They point to the fact that Defendant—according to a statement made one of its representatives—routinely monitors "multiple data streams" for information regarding the performance of its vehicles, such as consumer complaints posted publicly online, reported to the National Highway Traffic Safety Administration ("NHTSA"), or reported to Defendant's authorized dealerships. (*Id.* at 15.)

To support their assertion that Defendant knew of the stalling defect, the Wildins point to online consumer complaints. The FAC contains samples of customer complaints filed with NHTSA from March 28, 2017 to December 21, 2017. (*Id.* at 17–22.) It also contains samples of complaints posted on the website "pacificaforums.com," the earliest of which was posted on September 6, 2016. (*Id.* at 22–23.) The Wildins also allege that Defendant knew or should have known about the Stalling Defect "through sources not available to consumers, including FCA's own aggregate pre-market data" such as pre-market testing as well as "early complaints to FCA and its dealers who are agents for vehicle repairs, testing conducted in response to those complaints, high failure rates and replacement part sales data, consumer complaints to NHTSA, and other, aggregate post-market data from FCA dealers about the problem." (*Id.* at 5, 15, 25.)

The FAC alleges that Defendant also knowingly concealed the Stalling Defect by failing to disclose it at times of sale, lease, and repair. (*Id.* at 25–26.) Instead of repairing the Stalling Defect when customers came to its dealerships for repair, Defendant's agents refused to acknowledge the existence of the defect, informed the customers that their vehicles were functioning properly, or performed only ineffective "masking" repairs. (*Id.* at 16, 26.) According to the FAC, Defendants also falsely stated that the U01 Recall would "resolve" the defect, when in reality it was no different from the T23 update, which did not eliminate the defect. (*Id.* at 26.)

### C. Allegations Specific to the Wildins

The Wildins purchased a new Class Vehicle "[i]n or around September 2016." (*Id.* at 8.) Prior to purchasing their vehicle, the Wildins spent time researching the Chrysler Pacifica on FCA's corporate website, on authorized dealership websites, and through Google. (*Id.*) They also test-drove the vehicle with a dealership salesperson and inspected the window sticker before buying. (*Id.*)

The Wildins have experienced symptoms of the Stalling Defect on multiple occasions and have returned their vehicle for repairs three times, to no avail. (*Id.* at 8–9.) During a December 6, 2017 visit to one of Defendant's dealerships, the technician was unable to verify the incident and no repairs were performed. (*Id.* at 9.) During a December 13, 2017 visit, although the technician was once again unable to detect any trouble codes or duplicate the problem, the vehicle received an update and memory reset; nonetheless, the vehicle continued to exhibit the Stalling Defect. (*Id.*) During the third visit on February 19, 2018, a dealership performed Recall U01 on the vehicle. (*Id.*) Plaintiffs have continued to experience the Stalling Defect. (*Id.*)

### D. Claims

As a result of the allegations above, the FAC asserts the following claims: (1) violation of the California Consumers Legal Remedies Act ("CLRA"); (2) violation of California's Unfair Competition Law ("UCL"); (3) breach of an implied warranty under the California Song-Beverly Consumer Warranty Act; (4) breach of an implied

4

warranty under the federal Magnuson-Moss Warranty Act; and (5) unjust enrichment. (*Id.* at 30–38.)

## II. Legal Standards

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, a complaint must, taking as true all its well-pled factual allegations, contain enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Although "detailed factual allegations" are unnecessary, the complaint is required to allege more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). In reviewing a Rule 12(b)(6) motion, the Court accepts as true all facts alleged in the complaint and draws all reasonable inferences in favor of the plaintiff. *al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009). Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *De Soto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

While Federal Rule of Civil Procedure 9(b) requires a plaintiff alleging fraud to "state with particularity the circumstances constituting fraud or mistake," "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." A party must set forth "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007) (internal quotation marks omitted). For a claim asserting fraudulent omissions or concealment, Rule 9(b) is applied less stringently

5

because "a plaintiff cannot plead either the specific time of [an] omission or the place, as he is not alleging an act, but a failure to act." *Asghari v. Volkswagen Group of America, Inc.*, 42 F. Supp. 3d 1306, 1325 (C.D. Cal. 2013) (citation omitted). Despite the "somewhat relaxed" pleading standard when dealing with an omission claim, a plaintiff "must still plead the claim with particularity. Specifically, a plaintiff must 'set forth an explanation as to why [the] omission complained of was false and misleading' to state a claim under Rule 9(b)." *Id.* (citations omitted) (quoting *Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 932 (N.D. Cal. 2013)).

**III. Discussion**

Defendant seeks dismissal of: (1) the CLRA and UCL claims, because they do not adequately allege that Defendant knew about the Stalling Defect prior to the Wildins' purchase of their vehicle; (2) the CLRA and UCL claims, because they fail to meet the specificity requirements of Rule 9(b); (3) the UCL claim, because adequate remedies at law are available; and (4) the unjust enrichment claim, because there was an enforceable express contract between the Wildins and Defendant.

**A. Pre-Purchase Knowledge (CLRA and UCL Claims)**

Defendant argues first that the FAC fails to allege that Defendant knew of the Stalling Defect at the time of the Wildins' purchase. To survive this challenge, the factual allegations in the FAC, taken as true, must enable a plausible conclusion that Defendant knew of the defect at the time of the sale. *See Wilson v. Hewlett-Packard Co., Inc.*, 668 F.3d 1136, 1145–48 (9th Cir. 2012); *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 957–58 (N.D. Cal. 2014). For the reasons explained below, there are sufficient allegations to raise a plausible claim of pre-purchase knowledge.

Omissions are actionable under California where a duty to disclose exists. *Asghari*, 42 F. Supp. 3d at 1328–31. "Under California law, there are four circumstances in which an obligation to disclose may arise: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the

6

plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts." *Id*. at 1328 (quoting *Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980, 987 (N.D. Cal. 2010) (citation omitted)). Here, the second, third, and fourth circumstances apply: that is, the FAC asserts that Defendant (1) had exclusive knowledge about the defect and failed to disclose it, (2) actively concealed the fact of the defect from its customers,[1] and (3) made representations about the efficacy of the U01 Recall when in fact it did nothing more than what the ineffective T23 Update accomplished. To assert any of these claims, Plaintiffs must allege that Defendants knew of the Stalling Defect.

According to the FAC, the Wildins purchased their vehicle at some point in September 2016. (ECF No. 13 at 8.) Because the Court must make all reasonable inferences in favor of the Wildins, the Court assumes for purposes of this motion that the Wildins purchased their vehicle on the last day of that month, September 30, 2016. To adequately alleged knowledge, then, the FAC's allegations must make it plausible that Defendant knew of the defect prior to September 30, 2016.

### i. Consumer Complaints

"[C]ourts have expressed doubt that customer complaints in and of themselves adequately support an inference that a manufacturer was aware of a defect, noting that complaints posted on a manufacturer's webpage 'merely establish the fact that some consumers were complaining. By themselves they are insufficient to show that [the manufacturer] had knowledge [of the defect].'" *Wilson*, 668 F.3d at 1147 (quoting *Berenblat v. Apple, Inc.*, Nos. 08-4969 JF (PVT), 09-1649 JF (PVT), 2010 WL 1460297, at *9 (N.D. Cal. Apr. 9, 2010)); *see also Baba v. Hewlett-Packard Co.*, 2011 WL 317650, at *3 (N.D. Cal. Jan. 28, 2011) ("Awareness of a few customer complaints, however, does not establish knowledge of an alleged defect."). In *Baba*, the court held that three

---

[1] As a general matter, California courts have held that a failure to disclose a defect about a consumer product is actionable under the CLRA only if the defect presents a "safety issue." *See Wilson*, 668 F.3d at 1141 (collecting cases). The parties do not dispute that the Stalling Defect presents a safety issue.

7

complaints posted on Defendant's website prior to Plaintiff's purchase were insufficient to support Plaintiff's claim that Defendant knew of the defect.

Here, the FAC's allegations fare no better. Only one of the many consumer complaints made to NHTSA (ECF No. 13 at 17–22) or other websites (*id.* at 22–24) discussed in the FAC—the September 6, 2016 post on pacificaforums.com—predates Plaintiffs' purchase. Even if, contrary to the conclusions of several courts, consumer complaints could on their own create a plausible claim of pre-purchase knowledge, it surely would take more than one consumer complaint to support such an assertion.

While the single pre-purchase consumer complaint on pacificaforums.com does not itself create a plausible claim that Defendant knew of the Stalling Defect at the time of the Wildins' purchase, it could possibly combine with other indicia of knowledge to sufficiently allege Defendant's pre-purchase knowledge. The Court considers such other indicia of knowledge next.

### ii. Technical Service Bulletins, T23, and U01 Recall

Plaintiffs allege that Defendant's issuance of TSBs prior to Plaintiffs' purchase of the Class Vehicle, and the post-sale release of the T23 software update and U01 Recall, suggest that Defendant had pre-sale knowledge of the defect. Courts have found that allegations of TSBs and updates issued after the sale of a vehicle suffice to allege pre-sale knowledge. *See, e.g.*, *MyFord Touch*, 46 F. Supp. 3d at 958. Such courts have explained that even though the defendant's conduct occurred after the relevant sale, "[p]resumably, the TSBs and updates were pr[ec]eded by an accretion of knowledge by [the Defendant]." (*Id.*) Here, the Wildins argue that the pre-sale TSBs, in conjunction with the post-sale updates, indicate such an "accretion of knowledge over time." (ECF No. 16 at 10.) The Court agrees.

The Wildins argue that in light of the post-sale releases of the T23 Update and U01 Recall, in conjunction with the pre-purchase TSBs, it is plausible Defendant obtained an "accretion of knowledge" of the Stalling Defect prior to the Wildins' purchase. They rely on three cases. First, *MyFord Touch Consumer Litigation*, 46 F. Supp. 3d 936, involved a

8

3:17cv-02594-GPC-MDD

claim relating to the MyFord Touch ("MFT") system that Ford included in vehicles beginning in 2010. Ford issued eight TSBs and additional software updates between April 2011 and October 2013 in an attempt to fix a defect in the MFT system that caused it to freeze. *Id.* at 949–50. Of the several plaintiffs in the case, the earliest vehicle purchase occurred in October 2010. *Id.* at 948. While the court called the sufficiency of the pre-purchase knowledge allegations as to this and other 2010 purchasers a "closer question," it concluded that pre-purchase knowledge even to the earliest purchasers was plausible. *Id.* at 958. The court explained that because the first TSB was issued "only a few months after the rollout of the MFT system," and that the earliest purchasers of the MFT system "began taking in their cars for servicing almost immediately," "[o]ne could reasonably infer that the TSB was issued in response to consumer complaints that surfaced immediately after rollout." *Id.*

In *MacDonald v. Ford Motor Company*, 37 F. Supp. 3d 1087 (N.D. Cal. 2014), purchasers of Ford Escape Hybrids and Mercury Mariner Hybrids between 2005 and 2008 sued Ford over a coolant pump defect that caused a loss of the vehicles' power. To show pre-purchase knowledge, plaintiffs pointed to "pre-production testing, pre-release testing data, early consumer complaints made exclusively to Ford, high levels of repair orders and warranty reimbursements, testing conducted in response to complaints, replacement part sales data, and aggregate data from Ford dealers." *Id.* at 1093. The plaintiffs included in the complaint samples of online consumer complaints an interview with a Ford representative in 2006 referencing a "water pump" issue, and three TSBs, one of which was prior to the first plaintiff's purchase, and the other two in 2008. *Id.* The court explained that a plausible inference from this information is that "Ford was generally aware of problems with the coolant pump, and that despite this awareness it continued to sell vehicles containing the defective part" in 2005. *Id.* It further explained that while "a TSB issued long after purchase lends little support to the necessary inference of knowledge," "these TSBs were issued only five and nine months after the last relevant purchase in this case, and *less than two years after the first purchase.*" *Id.* at

9

3:17cv-02594-GPC-MDD

1094 (emphasis added). The court also relied on the Ford representative interview, which acknowledged a problem with water pumps in the vehicles. *Id.* at 1094–95.

Last, the Wildins rely on *Falco v. Nissan North America Inc.*, No. CV 13-00686 DDP (MANx), 2013 WL 5575065 (C.D. Cal. Oct. 10, 2003). There, plaintiffs sued over a defect in Nissan vehicles' Timing Chain Tensioning System ("TCTS") that caused "an inability to accelerate, maintain speed, and idle smoothly, and potentially catastrophic engine failure." *Id.* at *1. The plaintiffs alleged that Nissan knew of the defect in early 2004. *Id.* at *6. In support of that assertion, they alleged that in July 2007 Nissan issued the first of several TSBs regarding the TCTS and that in 2006 or 2007 Nissan made alterations to the TCTS to remove the defect. *Id.* The court explained that these specific allegations "permit plausible inferences that [Nissan] was aware of the defect at the time they sold the vehicles in 2005 and 2006 and that [Nissan] acquired this knowledge through the sorts of internal data Plaintiffs allege." *Id.*

Here, Defendant issued two TSBs relating to the PCM prior to the Wildins' purchase. (ECF No. 13 at 6.) It issued a third TSB relating to the PCM two months after the Wildins' purchase, and a fourth just over three months later. (*Id.*) Eleven months after the Wildins' purchase Defendant issued the T23, which contained the exact same fix as the recall Defendant claimed fixed the Stalling Defect. Compared with the cases just described, these fact raise a plausible claim that Defendant knew of the Stalling Defect at the time of the Wildins' purchase. *See also Philips v. Ford Motor Co.*, No. 14-cv-02989-LHK, 2015 WL 4111448, at *9–10 (N.D. Cal. July 7, 2015) (finding a plausible claim of pre-purchase knowledge in January 2010 when the defendant issued its first TSB in May 2011).

The fact that all of these actions by Defendant involved altering the PCM software—the precise aspect of the vehicle that the FAC alleges is causing the Stalling Defect—gives rise to a reasonable inference that Defendant knew of the Stalling Defect at the time it issued its first or second TSB. *See MacDonald*, 37 F. Supp. 3d at 1094 (explaining that it was plausible that the "water pump" issue discussed during the

10

representative's interview related to the "coolant pump" defect at issue in that case). It may be the case that these early TSBs did not involve the PCM issue that is causing the Stalling Defect. It also may be the case that Defendant did not know when it issued the first two TSBs that that PCM issue would lead to the stalling that the Wildins have experienced. But at the motion to dismiss stage, that is not the question the Court must address. Instead, the Court must ask whether it is at least plausible that Defendant knew that the PCM problems addressed in the first two TSBs, and discussed in the following TSBs soon after, would lead to stalling. The Court concludes that it is. *See MyFord Touch*, 46 F. Supp. 3d at 958 ("While the Court has some doubts whether Plaintiffs will actually be able to prove such [knowledge], that does not mean that Plaintiffs' case is implausible.").[2]

### B. Failure to Allege Fraud with Specificity

Defendant argues that the FAC fails to meet the heightened pleading standards of Rule 9(b) because "it does not allege where or how the omitted information should have been revealed." (ECF No. 14-1 at 7.) The Court disagrees. While it is true that Rule 9(b) requires a plaintiff to "describe . . . where the omitted information should or could have been revealed," *Tapia v. Davol, Inc.*, 116 F. Supp. 3d 1149, 1163 (S.D. Cal. 2015) (internal quotation marks omitted) (citing *Erickson v. Boston Scientific Corp.*, 846 F. Supp. 2d 1085, 1092 (C.D. Cal. 2011)), the FAC satisfies this requirement. It indicates that prior to purchasing their vehicle the Wildins reviewed FCA's corporate website, and also that had they known about the Stalling Defect they "would not have purchased their Class Vehicle, or would have paid less for it." (ECF No. 13 at 8.) Thus, the FAC indicates that FCA could have notified potential customers of the Stalling Defect through its website.

---

[2] Because the FAC's allegations of pre-purchase knowledge are adequate, it follows that the allegations of knowledge also are adequate to support the Wildins' claim that Defendant actively concealed the defect when the Wildins brought their vehicle in for repair.

11

Defendant disputes the assertion that it could have disclosed the Stalling Defect on its website, complaining that posting such a notice "would defy common sense and real-world business practice." (ECF No. 14-1 at 7.) But that fact is irrelevant to this analysis. The question the Court must address here is whether the FAC indicates where Defendant "could have" revealed the omitted information about the Stalling Defect. Because the FAC indicates that the information could have been included on FCA's website—and there is no reason to believe it could not have done so—the answer to that question is yes.[3] *See MacDonald*, 37 F. Supp. 3d at 1096 ("Plaintiffs adequately allege the 'who what when and how,' given the inherent limitations of an omission claim. In short, the 'who' is Ford, the 'what' is its knowledge of a defect, the 'when' is prior to the sale of Class Vehicles, and the 'where' is the various channels of information through which Ford sold Class Vehicles.").

**C. UCL Claim**

Defendant seeks to dismiss the UCL claim on the ground that there are adequate remedies at law available to the Wildins. (ECF No. 14-1 at 7–8.) A plaintiff making a claim under the UCL may obtain only equitable relief. *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 733 (9th Cir. 2007). Because "[a] plaintiff may only seek equitable relief under California's UCL where she has no adequate remedy at law," *Moss v. Infinity Ins. Co.*, 197 F. Supp. 3d 1191, 1203 (N.D. Cal. 2016), if the Wildins' other claims provide adequate remedies at law, the UCL claim fails.

Normally, "[w]hen a plaintiff states a claim, the appropriate form of relief is not to be decided upon a motion to dismiss." *Spann v. J.C. Penney Corp.*, SA CV 12-0215 FMO (RNBx), 2015 WL 1526590, at *4 (C.D. Cal. Mar. 17, 2015). Nonetheless, several

---

[3] Defendant also argues that the FAC does not allege "that every purported class member reviewed FCA's website before purchasing their vehicles." (*Id.*) Absent a motion to strike class allegations, *see Roy v. Wells Fargo Bank, N.A.*, No. 14-cv-04661-SC, 2015 WL 1408919 (N.D. Cal. Mar. 27, 2015) (discussing disagreement among courts over whether a motion to strike class action allegations may be entertained at the motion to dismiss stage), the Court does not address issues relating to the putative class at the motion to dismiss stage.

district courts in this circuit have found it appropriate to dismiss UCL claims at the pleading stage when they are based on identical facts as other claims providing the legal remedy of damages. In *Philips*, for example, the court dismissed the plaintiffs' UCL claim for this reason, explaining that the plaintiffs had "an adequate remedy at law in the form of their claim for fraudulent concealment" as a result of Ford's failure to disclose a defect in its vehicles. 2015 WL 4111448, at *16. The *Philips* court cited to several district court orders finding that dismissal on this basis was procedurally proper. *See Durkee v. Ford Motor Co.*, No. C 14-0617 PJH, 2014 WL 4352184, at *3 (N.D. Cal. Sept. 2, 2014); *Gardner v. Safeco Ins. Co. of Am.*, No. 14-cv-02024-JCS, 2014 WL 2568895, at *7–8 (N.D. Cal. June 6, 2014); *Rhynes v. Stryker Corp.*, No. 10-5619 SC, 2011 WL 2149095, at *3–4 (N.D. Cal. May 31, 2011). Defendant cites additional district court orders dismissing UCL claims on the ground that they are based on the same facts as other claims seeking legal remedies. *See Munning v. Gap, Inc.*, 238 F. Supp. 3d 1195, 1203–04 (N.D. Cal. 2017); *Capata Fonseca v. Goya Foods Inc.*, No. 16-cv-02559-LHK, at *7–8 (N.D. Cal. Sept. 8, 2016); *Moss v. Infinity Ins. Co.*, 197 F. Supp. 3d 1191, 1203 (N.D. Cal. 2016).

Other district courts in this circuit, however, have declined to follow this practice. Those courts have done so primarily on the ground that no controlling authority prohibits a federal court plaintiff from pleading alternative remedies. *See Deras v. Volkswagen Grp. of Am., Inc.*, No. 17-cv-05452-JST, 2018 WL 2267448, at *6 (May 17, 2018); *Aberin v. Am. Honda Motor Co., Inc.*, No. 16-cv-04384-JST, 2018 WL 1473085, at *9 (N.D. Cal. Mar. 26, 2018); *Adkins v. Comcast Corp.*, No. 16-cv-05969-VC, 2017 WL 3491973, at *3 (N.D. Cal. Aug. 1, 2017); *Cabrales v. Castle & Mortg. LLC*, No. 1:14-cv-01138-MCE, JLT, 2015 WL 3731552, at *4 (E.D. Cal. June 12, 2015). As those courts indicate, the time to sort out alternatively pled remedial requests is at the end of a case, not the very beginning.

The Court sides with the latter group of decisions in this intra-circuit split. Dismissal of the Wildins' claims at this stage is premature, as there is no procedural bar

to a federal court plaintiff pleading alternative remedies. *Adkins*, 2017 WL 3491973, at *3 ("[T]his Court is aware of no basis in California or federal law for prohibiting the plaintiffs from pursuing their equitable claims in the alternative to legal remedies at the pleading stage.").[4] Discovery may reveal that the Wildins' claims providing legal remedies are inadequate for any number of reasons, despite the fact that their allegations appear adequate. *See Cabrales*, 2015 WL 3731552, at *4 ("Since Plaintiff's UCL claim is grounded in California law, there is no question that Plaintiff can pursue that claim as an alternative to legal remedies . . . should those legal remedies be unavailing."). For example, the parties' records may reveal that, despite what is alleged in the FAC, they inadvertently failed to satisfy an aspect of the CLRA's technical pre-suit notice requirements. *See* Cal. Civ. Code § 1782(a). What's more, dismissal of the UCL claim at this stage would not save Defendant or the Court substantial resources: if the UCL claim is truly identical to the Wildins' other claims as Defendant asserts, retention of the UCL claim at this stage would cause only incidental discovery burdens on Defendant beyond what would be necessary to litigate those claims that provide legal remedies.

In sum, the Court is not persuaded by those that have found it appropriate to dismiss UCL claims on the sole ground that the remedy provided by that claim may end up being unavailable to the plaintiff. In the absence of controlling authority compelling dismissal under these circumstances, the Court follows the normal rule that "the appropriate form of relief is not to be decided upon a motion to dismiss." *Spann*, 2015 WL 1526590, at *4.[5]

---

[4] Other courts on this side of the split have explained that dismissal of UCL claims on this ground is inappropriate because the UCL specifically provides "cumulative remedies." *See, e.g.*, *Covell v. Nine West Holdings, Inc.*, No. 3:17-cv-01371-H-JLB, 2018 WL 558976, at *7–8 (S.D. Cal. Jan. 25, 2018). This theory ultimately converges with the theory explained above—that alternative remedial requests should be dealt with at the end of a case, not the beginning—because, as the *Covell* court explained, once a plaintiff "ultimately prevails on her claims, she will still need to show that equitable relief is the only way to remedy a specific type of injury suffered by herself or the class." *Id.* at *8.

[5] In its Reply Memorandum, Defendant asserts that the UCL claim fails for the "independent" reason that the allegations do not support the Wildins' assertion that Defendant's conduct was fraudulent,

### D. Unjust Enrichment

Last, Defendant seeks dismissal of the unjust enrichment claim. Defendant argues that, under California law, the fact that the parties have a warranty contract precludes the Wildins' unjust enrichment claim. *See Durell v. Sharp Healthcare*, 108 Cal. Rptr. 3d 682, 699 (Ct. App. 2010) ("As a matter of law, an unjust enrichment claim does not lie where the parties have an enforceable express contract."). The extent of Defendant's argument is the following: "[h]ere, Plaintiffs' unjust enrichment claim seeks recovery for the same allegedly wrongful conduct as their other claims – FCA's alleged failure to disclose the Stalling Defect." (ECF No. 14-1 at 9.)

But the unjust enrichment claim is also premised on the Wildins' paying Defendant money as a result of seeking repairs after experiencing the Stalling Defect. There is no suggestion in the FAC that the warranty between the parties covered Defendant performing repairs on the Wildins' vehicle after the date of purchase. As a result, the unjust enrichment claim, to the extent it relies on Defendant's actively concealment of the defect while performing ineffective repairs on the Wildins' vehicle, is not coextensive with their warranty claims.

Even if the unjust enrichment claim was duplicative of the breach of warranty claim, for the same reasons discussed in the section above, the Court is not persuaded that it is appropriate to resolve this remedy issue at the pleadings stage. *See Colucci v. ZonePerfect Nutrition Co.*, No. 12-cv-2907-SC, 2012 WL 6737800, at *10 (N.D. Cal. 2012) (adopting the position of courts that have held "that claims for restitution or unjust enrichment may survive the pleading stage when pled as an alternative avenue of relief, though the claims, as alternatives, may not afford relief if other claims do"); *Vicuña v. Alexia Foods, Inc.*, No. C 11-6119 PJH, 2012 WL 1497507, at *3 (N.D. Cal. Apr. 27,

---

unfair, or unlawful. (ECF No. 18 at 6–8.) This argument was not raised in the original motion. (*See* ECF No. 14-1 at 7–8 (raising only the adequate-legal-remedy issue).) "The Court does not consider substantive arguments offered for the first time in a reply memorandum." *Bona Fide Conglomerate, Inc. v. SourceAmerica*, No. 3:14-cv-00751-GPC-AGS, 2018 WL 2193261, at *4 (S.D. Cal. May 14, 2018).

2012) ("[W]hile a claim for restitution is inconsistent and incompatible with a related claim for breach of contract or a claim in tort, at the pleading stage, a plaintiff is allowed to assert inconsistent theories of recovery.").

IV. **Conclusion**

For the reasons set forth below, the Court DENIES Defendant's motion to dismiss.

**IT IS SO ORDERED.**

Dated: June 19, 2018

Hon. Gonzalo P. Curiel
United States District Judge