Tarek H. Zohdy (SBN 247775)
Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
Laura E. Goolsby (SBN 321721)
Laura.Goolsby@capstonelawyers.com
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:    (310) 556-4811
Facsimile:    (310) 943-0396

Attorneys for Plaintiffs Alfonso and Arlene Moran

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALFONSO and ARLENE MORAN, individually, and on behalf of a class of similarly situated individuals,<br><br>          Plaintiffs,<br><br>     v.<br><br>FCA US LLC, a Delaware limited liability company,<br><br>          Defendant. | Case No.: 3:17-CV-02594-JO-AHG<br><br>Hon. Jinsook Ohta<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE SERVICE AWARDS**<br><br>Date:    February 15, 2023<br>Time:    9:15a.m.<br>Place:   Courtroom 4C |

# TABLE OF CONTENTS

I.  INTRODUCTION .................................................................................................1

II.  FACTS AND PROCEDURE ...............................................................................2

    A.  Plaintiffs' Experiences with the Class Vehicles ........................................2

    B.  Overview of the Litigation and Settlement Negotiations ...........................3

III.  SETTLEMENT BENEFITS ................................................................................5

    A.  Extended Powertrain Warranty ..................................................................5

    B.  Reimbursement for Crankshaft Position Sensor Repairs ..........................5

    C.  Vehicle Repurchase or Vehicle Replacement ............................................5

IV.  ARGUMENT .......................................................................................................7

    A.  The Parties Have Separately Negotiated Fees That Will Not Affect Class Benefits .....................................................................................................7

    B.  The Fee Request is Reasonable Under the Lodestar Method ....................8

        1.  The Hours Expended Are Reasonable ............................................9

        2.  The Hourly Rates are Reasonable .................................................12

        3.  A Negative Multiplier Confirms the Reasonableness of Class Counsel's Requested Fees ...............................................................14

    C.  The Expenses Advanced by Class Counsel Should be Reimbursed .......18

    D.  The Requested Service Awards Are Fair and Reasonable and Should Be Approved ...................................................................................................18

V.  CONCLUSION ..................................................................................................19

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Aarons v. BMW of North America*, No. 11-7667-PSG, 2014 U.S. Dist. LEXIS 118442
(C.D. Cal. Apr. 29, 2014)..................................................................... 14, 17

*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997)...............................................16

*Asghari v. Volkswagen Grp. Of America*, No. 13-02529-MMM, 2015 WL 12732462
(May 29, 2015)..........................................................................................14

*Blum v. Stenson*, 465 U.S. 886 (1984) ...............................................................12

*Bravo v. Gale Triangle, Inc.*, No. 16-03347 BRO, 2017 WL 708766 (C.D. Cal. Feb. 16, 2017) ........................................................................................................13

*Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877 (C.D. Cal. 2016) ...........................13

*Cholakyan v. Mercedes-Benz USA, LLC*, 281 F.R.D. 534 (C.D. Cal. 2012) ..................16

*Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848 (N.D. Cal. 2010)...................14

*Eisen v. Porsche*, 2014 WL 439006 (C.D. Cal. Jan. 30, 2014)................................. 11, 12

*Etter v. Thetford Corporation*, No. 13-00081-JLS, 2017 WL 1433312 (C.D. Cal. Apr. 14, 2017) ........................................................................................................13

*Fischel v. Equitable Life Assur. Society of U.S.*, 307 F.3d 997 (9th Cir. 2002)...............15

*Fox v. Vice*, 131 S. Ct. 2205 (2011) ....................................................................9

*Grodzitsky v. Am. Honda Motor Co.*, No. 2-01142-SVW,
2014 U.S. Dist. LEXIS 24599 (C.D. Cal. Feb. 19, 2014).............................................16

*Hensley v. Eckehart*, 461 U.S. 424 (1983) ......................................................7, 8

*In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ...............7, 9

*In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539 (9th Cir. 2019).........................7, 17

*In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166 (S.D. Cal. 2007) ..................18

*In re Portal Software, Inc. Sec. Litig.*,
2007 U.S. Dist. LEXIS 88886 (N.D. Cal. Nov. 26, 2007) ...........................................17

*In re Toys "R" Us-Del.*, Inc. FACTA Litig.,
295 F.R.D. 438 (C.D. Cal. 2014) ........................................................................17

*In re Washington Public Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th Cir. 1994)...15

*Johnson v. General Mills, Inc.*, No. 10-00061-CJC, 2013 U.S. Dist. LEXIS 90338 (C.D. Cal. June 17, 2013) ................................................................................................18

*Kearney v. Hyundai Motor Am.*, No. 09-1298, 2013 U.S. Dist. LEXIS 91636 (C.D. Cal. June 28, 2013) ................................................................................................13

*Klee v. Nissan N. Am., Inc.,* 2015 U.S. Dist. LEXIS 88270 (C.D. Cal. July 7, 2015) .....13

*Laguna v. Coverall North America,* 753 F.3d 918 (9th Cir. 2014).......................................7

*MacDonald v. Ford Motor Co.*, No. 13 -02988-JST, 2016 WL 3055643 (May 31, 2016) ............................................................................................................. 13, 15

*Mangold v. Calif. Public Utilities Comm'n*, 67 F.3d 1470 (9th Cir. 1995).........................8

*Parkinson v. Hyundai Motor America*, 796 F. Supp. 2d 1160 (C.D. Cal. 2010) .........8, 13

*Rodriguez v. West Pub. Corp.*, 563 F.3d 948 (9th Cir. 2009) ................................................................. 17, 18

*Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980 (N.D. Cal. 2010) .............................................................16

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ...........................................................7

*Steiner v. American Broad. Co.*, 248 Fed. Appx. 780 (9th Cir. 2007) ..............................17

*Stockinger v. Toyota Motor Sales, U.S.A., Inc.,* 2020 WL 1289549 (C.D. Cal. Mar. 3, 2020)...............................................................16

*Trs. of the Constr. Indus. and Laborers Health and Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253 (9th Cir. 2006) ...............................................................................18

*Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995)....................17

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002)................................... 8, 14, 15

**STATE CASES**

*Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43 (2008).........................................................18

*Children's Hospital and Med. Center v. Bonta*, 97 Cal. 4th 740 (2002)...........................12

*Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553 (2004) ..............................................18

*Horsford v. Board of Trustees of California State Univ.*, 132 Cal. App. 4th 359 (2005).9, 15

*In re Consumer Privacy Cases*, 175 Cal. App. 4th 545 (2009).........................................14

*Ketchum v. Moses*, 24 Cal. 4th 1122 (2001) .....................................................................8, 9

*Kim v. Euromotors West/The Auto Gallery*, 149 Cal. App. 4th 170 (2007) ......................8

*Margolin v. Regional Planning Com.*, 134 Cal. App. 3d 999 (1982) ...............................13

*Serrano v. Priest*, 20 Cal. 3d 25 (1977) ..........................................................................8, 9

*Serrano v. Unruh*, 32 Cal. 3d 621 (1982)............................................................................9

*Sutter Health Uninsured Pricing Cases*, 171 Cal. App. 4th 495 (2009)..........................18

*Vo v. Las Virgenes Municipal Water Dist.*, 79 Cal. App. 4th 440 (2000)..........................9

*Weeks v. Baker & McKenzie*, 63 Cal. App. 4th 1128 (1998)...............................................9

**FEDERAL STATUTES**

15 U.S.C. §§ 2301 *et seq.* (Magnuson-Moss Warranty Act ...............................................8

Fed. R. Civ. P. 23(h) .............................................................................................................7

**STATE STATUTES**

Cal. Civ. Code §§ 1750 *et seq.* (Cons. Legal Remedies Act (CLRA)) ...............................8

Cal. Civ. Code §§ 1790-1795.7 (Song-Beverly Consumer Warranty Act) ........................8

**SECONDARY AUTHORITIES**

Posner, ECONOMIC ANALYSIS OF LAW 534, 537 (4th ed. 1992).........................................9

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Plaintiffs Alfonso and Arlene Moran ("Plaintiffs") brought this class action to secure necessary relief for a nationwide class of current and former owners and lessees of certain 2017-2021 Chrysler Pacifica vehicles equipped with a 3.6-liter V6 engine and a 9-speed automatic transmission that were sold in the United States and its territories ("Class Vehicles") prone to stalling issues. Plaintiffs' settlement successfully addresses the alleged Stalling Defect while also creating a reimbursement program for Class Members to recoup out-of-pocket expenses for qualifying repairs, securing an extended powertrain warranty, and providing an arbitration program for vehicle repurchase or replacement.

Plaintiffs and their counsel believe the settlement is fair and reasonable, and provides Class Members similar, if not superior, remedies to what they could otherwise have expected to receive if the case had been successfully tried, but without the delay and risks associated with continued litigation and trial. Class Counsel accordingly move to be compensated for their efforts and achievement on behalf of the class, and for service awards to the named Plaintiffs who prosecuted this action. Plaintiffs seek an award of attorneys' fees and costs in the amount of $835,000, and Service Awards of $10,000, each, for their service on behalf of the class.

The fees, costs, and service awards will be paid by Defendant FCA US LLC ("Defendant" or "FCA"), and not from a common fund. Awarding the requested amounts in attorneys' fees and costs will not affect the benefits for Class Members and will fairly compensate Class Counsel for their work in this case, as confirmed under the prevailing lodestar method for calculating fees. The lodestar is based on reasonable hours multiplied by reasonable rates, with a modest *negative* multiplier. Class Counsel have expended a collective 1745.8 hours prosecuting this case—a reasonable number given the complexities of this action and its settlement. Among the many tasks performed, Class Counsel have responded to hundreds of inquiries by Class Members, which includes reviewing Class Members' repair orders and answering questions about the alleged defect

1   and the settlement.

2        Class Counsel's hourly rates are reasonable and are within the range of rates
3   repeatedly approved by the Southern District. In light of the high contingent risk presented
4   by this case and the outstanding results achieved, as well as to account for the additional
5   hours that Class Counsel expects to put into this case after the Settlement is finally
6   approved, counsel would otherwise be entitled to a positive multiplier. However, counsel
7   seeks an amount in fees that is less than what they actually billed, a fee amount generally
8   considered reasonable which should be approved.

9        The expenses advanced by Class Counsel are those that would typically be billed to
10  a paying client and should be reimbursed. The requested service awards are similarly
11  reasonable and modest and, as such, should be approved.

12  **II.   FACTS AND PROCEDURE**

13       This nationwide class action arises out of an alleged defect in 2017-2021 Chrysler
14  Pacifica vehicles equipped with a 3.6-liter V6 engine and  9-speed automatic transmission
15  that were sold in the United States. FCA designed, manufactured, and distributed the Class
16  Vehicles. The vehicles allegedly were sold with engine control software that becomes out
17  of sync with the crankshaft position sensor, resulting in a sudden loss of engine power.
18  Plaintiffs and Class Members have had the unnerving experience of suddenly losing power
19  in their vehicle several times since purchase, and despite multiple trips to FCA dealerships
20  and having a safety recall performed that purported to address the defect, Plaintiffs
21  continued to experience sudden, unexpected stalling and loss of power at highway speeds.

22       **A.   Plaintiffs' Experiences with the Class Vehicles**

23       Plaintiffs are California Citizens who reside in Fountain Valley, California. (*See*
24  Dkt. No. 26, Second Amended Complaint ("SAC") ¶ 23.) In or around March of 2017,
25  Plaintiffs purchased a new 2017 Chrysler Pacifica from Glenn Thomas Dodge Chrysler
26  Jeep, an authorized FCA dealership in Signal Hill, California. (*Id.* at ¶ 24.) Since
27  purchasing their vehicle, Plaintiffs have experienced symptoms of the Stalling Defect on
28  multiple occasions. (*Id.* at ¶ 28.)

1    By January 2018, and with approximately 12,000 miles on their vehicle, Plaintiffs'
2    vehicle had repeatedly exhibited sudden losses of power while driving, causing it to
3    abruptly decelerate. (*Id.*) Plaintiffs brought their vehicle back to the Glenn Thomas FCA
4    dealership. The authorized FCA repair facility performed a software update and told Ms.
5    Moran that the update should fix her sudden losses of power. (*Id.*) The vehicle again
6    suddenly lost power while Ms. Moran was driving on the freeway at approximately sixty-
7    five (65) miles per hour, on or around March 1, 2018. (*Id.* at ¶ 29.) The vehicle would not
8    exceed twenty (20) miles per hour, despite attempted acceleration. (*Id.*) Ms. Moran
9    managed to exit the freeway and bring the vehicle back to the same FCA dealership where,
10   aside from resetting the powertrain control module, the dealership failed to perform any
11   repairs. (*Id.*) Ms. Moran's vehicle abruptly lost power again in August 2018 while she was
12   driving on the freeway, but the dealership did not conduct any repairs. (*Id.* at ¶ ¶ 30-31.)
13   The vehicle continued to exhibit abrupt, unintended decelerations. (*Id.* at ¶ 33.)

14   **B.    Overview of the Litigation and Settlement Negotiations**

15   This action was initially filed by Plaintiffs Ryan and Sarah Wildin, on December
16   30, 2017. (*See* Dkt. No. 1; Declaration of Tarek H. Zohdy ["Zohdy Decl.,"] ¶ 2.) They
17   reached out to FCA requesting that Defendant repurchase their vehicle under the California
18   Lemon Law because they felt unsafe in the vehicle, which the Wildins contended
19   continued to fail. (*See* Dkt. No. 23, at 1; Zohdy Decl. at ¶ 3.) Without admitting liability,
20   FCA agreed to repurchase their vehicle pursuant to the California Lemon Law and permit
21   the putative class to file a SAC with new plaintiffs. (*Id.* at 1-2; Zohdy Decl. at ¶ 4.) The
22   Wildin Plaintiffs filed their Motion of Voluntary Dismissal on October 24, 2018. (*See* Dkt.
23   No. 27; Zohdy Decl. at ¶ 5.)

24   Plaintiffs filed the operative SAC on October 15, 2018. (Dkt. No. 26; Zohdy Decl.
25   at ¶ 6.) Plaintiffs asserted material omissions claims under the California Consumers Legal
26   Remedies Act, California Civil Code section 1750 *et seq.* ("CLRA") and the California
27   Unfair Business Practices Act, Business and Professions Code section 17200 *et seq.*,
28   alleging that FCA had a duty to disclose the existence of the Stalling Defect because it was

a material fact in Defendant's exclusive or superior knowledge and because FCA failed to disclose and actively concealed those material facts from the Class. Plaintiffs also raised breach of implied warranty claims under the Song-Beverly Consumer Warranty Act, California Civil Code section 1791 *et seq.*, and the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, and brought an unjust enrichment claim. (*See id*; Zohdy Decl. at ¶ 7.)[1]

FCA filed its Answer and Affirmative Defenses to Plaintiffs' SAC on November 5, 2018. (*See* Dkt. No. 33.) The parties thereafter engaged in extensive discovery, including FCA's rolling production of documents consisting of over 100,000 pages, depositions of the named Plaintiffs, as well as depositions of six FCA personnel. (Zohdy Decl. at ¶ 8.) In light of this continued discovery, the parties participated in multiple settlement conferences, beginning on September 14, 2020. (*Id.* at ¶ 9.) They elected to mediate this case before Magistrate Judge Allison H. Goddard, and settlement video conferences were held on November 18, 2020. (*Id.*) The case did not settle at that time. (*Id.*) On January 28, 2021, the Court granted a joint motion to continue pretrial deadlines in order to facilitate settlement efforts and scheduled a settlement conference for February 12, 2021. (*Id.* at ¶ 10.) The parties were unable to settle, but the Court reset the settlement conference in order to continue settlement discussions on March 1, 2021. (*Id.*) Subsequently, the parties continued to discuss settlement. (*Id.* at ¶ 11.)

On March 15, 2021, another mandatory settlement conference was held, after which Magistrate Judge Goddard issued a Mediator's Proposal in an effort to further settlement. (*Id.* at ¶ 12.) Thereafter, the parties jointly moved for a stay on the basis that they had conducted multiple mediations before Magistrate Judge Goddard and believed a settlement was attainable if given additional time to confirm whether the mediator's proposal could

---

[1] Prior to the withdrawal of the Wildins, FCA brought a Motion to Dismiss their First Amended Complaint on May 11, 2018, which was denied in its entirety. (*See* Dkt. No. 14.) The Court concluded that there were adequate allegations that FCA knew of the defect before it sold the Wildins their vehicle and adequate allegations that FCA fraudulently failed to disclose this knowledge.(*Id.*) Accordingly, FCA filed its Answer to the Wildin Plaintiffs' FAC on July 3, 2018. (*See* Dkt. No. 20.)

be accepted. (*Id.*) On April 19, 2021, the Court subsequently granted the parties' motion to stay the case for 60 days, pending settlement discussions. (*Id.*) On June 16, 2021, the parties filed a notice of settlement, having reached an agreement in principle to resolve all claims between Plaintiffs and FCA pending in this action. (*Id.*)

## III.   SETTLEMENT BENEFITS

Class Counsel negotiated a Settlement with several tiers of benefits in order to provide relief to Class Members with varying experiences and different types of harms associated with the Stalling Defect.

### A.   Extended Powertrain Warranty

FCA has agreed to extend coverage for repair or replacement of engine crankshaft position sensors under FCA US LLC's Powertrain Limited Warranty, which extends five years from the date of a Class Member's purchase or lease of a Class Vehicle, or until that vehicle has an odometer reading of 60,000 miles, whichever occurs first. (Zohdy Decl., ¶ 13, Exhibit ["Ex."] A, Settlement Agreement ["SA"], § II.B.) Prior to the Settlement, the crankshaft position sensor was only covered by a lesser 3-year/36,000 basic warranty.

### B.   Reimbursement for Crankshaft Position Sensor Repairs

Under the Settlement, FCA shall also reimburse Class Members for out-of-pocket costs paid to repair their Class Vehicle's crankshaft position sensors if the Class Members purchased or leased their Class Vehicles more than five (5) years before the Effective Date of Settlement and before the Class Vehicle reached 60,000 miles. Class Members must submit Proof of Ownership and Claim Forms to the Claims Administrator within 180 days of the Effective Date of Settlement. (SA, § II.C.)

### C.   Vehicle Repurchase or Vehicle Replacement

Additionally, Class Members are entitled to an expedited, binding Arbitration for claims seeking a vehicle repurchase or replacement based in whole or in part on alleged defects in their Class Vehicles relating to stalling ("Arbitration" or "Arbitration Program"). (SA, §§ II.L; I.GG.) The Arbitrator will apply the lemon law of the state where the Class Member took delivery of the vehicle and may award a repurchase or replacement if the

1  Arbitrator finds the Class Member is entitled under the provisions of that state's lemon

2  law.[2] (*Id.* at II.L.1.a.). The Arbitration Program will enable Class Members to reach final

3  resolution on the merits of their much more quickly and efficiently than through a court

4  action. Participation in the Arbitration Program requires that FCA be given a final

5  opportunity to repair the Class Vehicle, free of charge to the Class Member. (*Id.* at §

6  II.L.1.b.)

7  Further, FCA will pay all costs of Arbitration. (SA, § II.L.) As another settlement

8  benefit, a repurchase or replacement claim may be submitted up to five years after the

9  original sale to the first buyer or six months after the Approval Date of the Settlement,

10  whichever is later, which in many cases will fall well beyond the applicable statute of

11  limitations.[3] (*Id.* at § II.L.1.d.) Moreover, if a Class Member chooses to use an attorney,

12  FCA will pay up to $5,000 in attorneys' fees if the Class Member wins in an Arbitration,

13  but if a Class Member is unsuccessful, they are not obligated to pay FCA's attorneys' fees.

14  (*Id.* at § II.L.1.g.). Class Members also have the right to appeal the initial Arbitration

15  decision to a second Arbitrator, if they advance the costs of the appeal, but do not have the

16  right to seek further review with a court. (*Id.* at § II.L.1.f.)

17  Even where Class Members do not qualify for a Vehicle Repurchase, they are

18  permitted to claim a breach of FCA's New Vehicle Limited Warranty, or any extensions

19  of that warranty, based in whole or in part on stalling in Class Vehicles may submit these

20  claims to the Arbitrator. (SA at § II.L.2.) If a breach is established, the Arbitrator may, as

21  appropriate, order a repair, or reimbursement for any amounts paid by the Class Member

22

23  ───────────────────

[2] However, Class Members are not entitled to civil penalties or punitive damages.
24  (SA at § II.L.3.)

[3] Thus, the Settlement Agreement provides for an extension of the statute of
25  limitations for class members who still own or lease class vehicles at the time of an
arbitration hearing. (SA § II.L.1.d.) Regardless of the applicable state law governing the
26  claims of an Arbitration Claimant who still owns or leases a Class Vehicle as of the time
of an Arbitration Hearing, the Statute of Limitations for a Vehicle Repurchase claim
27  brought by such a Claimant that is based in whole or in part on alleged defects that cause
stalling in the Class Vehicle shall be five years after delivery of the Class Vehicle to the
28  first retail purchaser, or 180 days after the Approval Date, whichever is later. (*Id.*)

1   for a repair. (*Id.*) Such claims must be filed within the statute of limitations for express

2   warranty claims established by the law of the state where Class Members purchased their

3   vehicles.[4] (*Id.*)

4   **IV.   ARGUMENT**

5        **A.      The Parties Have Separately Negotiated Fees That Will Not Affect Class**

6                **Benefits**

7        At the conclusion of a successful class action, the plaintiff may apply to the Court

8   for an award of "reasonable attorneys' fees and non-taxable costs that are authorized by

9   law or the parties' agreement." Fed. R. Civ. P. 23(h). In considering the fee application,

10  courts must ensure that the fees awarded are reasonable. *In re Bluetooth Headset Products*

11  *Liab. Litig*., 654 F.3d 935, 941 (9th Cir. 2011). In their evaluation, however, courts must

12  account for the fact that "the parties are compromising to avoid litigation." *Laguna v.*

13  *Coverall North America*, 753 F.3d 918, 922 (9th Cir. 2014) *vac'd as moot*, 2014 U.S. App.

14  LEXIS 21950 (9th Cir. Nov. 20, 2014). Accordingly, "the district court need not inquire

15  into the reasonableness of the fees even at the high end with precisely the same level of

16  scrutiny as when the fee amount is litigated." *Id*. (quoting *Staton v. Boeing Co*., 327 F.3d

17  938, 966 (9th Cir. 2003)). This standard is consistent with the strong policy discouraging a

18  "second major litigation" arising from a request for attorneys' fees. *Hensley v. Eckerhart*,

19  461 U.S. 424, 437 (1983) ("Ideally, of course, litigants will settle the amount of a fee").

20       Further, as the *en banc* court in *Hyundai* recently found, separate settlement and fee

21  negotiations provide another indication of non-collusiveness. *In re Hyundai & Kia Fuel*

22  *Econ. Litig.*, 926 F.3d 539, 568 (9th Cir. 2019). Here, the agreed-upon attorneys' fees and

23  costs in the amount of $835,000 (*See* SA, section II.N. ), are the product of non-collusive,

24  adversarial negotiations conducted at arm's-length before Magistrate Judge Allison H.

25  Goddard. Additionally, by agreeing to resolve attorneys' fees amicably, Defendant's

26  counsel averted the possibility that Class Counsel might apply for, and receive, a much

27

28       [4] The Arbitrator may not award attorney fees for pursuing a claim for breach of
FCA's New Vehicle Limited Warranty or any extension of that warranty. (SA at § II.L.2.)

larger award, and thus avoided a "second major litigation" on attorneys' fees. *See Hensley* 461 U.S. at 437 ("A request for attorney's fees should not result in a second major litigation."). Accordingly, this Court's review of the reasonableness of the fee request should take into consideration the Parties' bargain, including, notably, that the attorneys' fees are discrete from relief funds for the Class.

### B.     The Fee Request is Reasonable Under the Lodestar Method

"In diversity actions, federal courts look to state law in determining whether a party has a right to attorneys' fees and how to calculate those fees." *Mangold v. Calif. Public Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995). The state law governing the underlying claims in a diversity action "also governs the award of fees." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Here, California law governs, as Plaintiffs have sued for relief under, *inter alia*, the Consumer Legal Remedies Act ("CLRA") and, as prevailing parties, are entitled to fees under the CLRA's one-way fee-shifting provision.[5]

Under California law, lodestar is the "starting point of every fee award." *Serrano v. Priest*, 20 Cal. 3d 25, 48 n.23 (1977) ("*Serrano III*"). For any fee application subject to a statutory award, courts should "presume that the Legislature intended courts to use the prevailing lodestar adjustment method." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1136 (2001);

---

[5] Under the mandatory fee-shifting provision of the CLRA, the Court "shall award court costs and attorneys' fees to a prevailing plaintiff in a litigation" under that section. Cal. Civ. Code § 1780(e). "[A]n award of attorney fees to 'a prevailing plaintiff' in an action brought pursuant to the CLRA is mandatory, even where the litigation is resolved by a pre-trial settlement agreement." *Kim v. Euromotors West/The Auto Gallery*, 149 Cal. App. 4th 170, 178-179 (2007).

There is no dispute that Plaintiffs, having obtained the relief they sought when they filed suit, are the prevailing parties. *See Parkinson v. Hyundai Motor America*, 796 F. Supp. 2d 1160, 1171 (C.D. Cal. 2010) (authorizing fees under CLRA when the plaintiff obtained relief sought by way of a class action settlement). Defendant has also recognized Plaintiffs' right to recover fees by entering into the SA, under which it would not oppose Plaintiffs' request for attorneys' fees and costs/expenses in an amount not exceeding $835,000. (SA, section II.N.) Plaintiffs are also entitled to fees under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(2) and the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1794(d).

1    *accord In re Bluetooth*, 654 F.3d at 941 ("The 'lodestar method' is appropriate in class

2    actions brought under fee-shifting statutes."). This presumption exists because the lodestar

3    method most effectively compensates successful counsel for "all the hours reasonably

4    spent." *Ketchum*, 24 Cal.4th at 1133. "Anchoring the analysis to [lodestar] is the only way

5    of approaching the problem that can claim objectivity, a claim which is obviously vital to

6    the prestige of the bar and the courts." *Serrano III*, 20 Cal. 3d at 48 n.23.

7            To determine lodestar, the Court must first multiply "the number of hours

8    reasonably expended on the litigation … by a reasonable hourly rate." *In re Bluetooth*, 654

9    F.3d at 941. However, because the base lodestar does not capture the full market value of

10   the services rendered, California policy strongly encourages "a fee-enhancement reflecting

11   the risk that the attorney will not receive payment if the suit does not succeed." *Ketchum*,

12   24 Cal. 4th at 1138 (citing Posner, ECONOMIC ANALYSIS OF LAW 534, 537 (4th ed. 1992)).

### 1.    The Hours Expended Are Reasonable

14          In evaluating the reasonableness of the hours Class Counsel expended, courts must

15   "focus on providing an award of attorneys' fees reasonably designed to fully compensate

16   plaintiffs' attorneys for the services provided." *Horsford v. Board of Trustees of California*

17   *State Univ.*, 132 Cal. App. 4th 359, 395 (2005). Courts do so by looking at "the entire

18   course of the litigation, including pretrial matters, settlement negotiations, discovery, [and]

19   litigation tactics…" *Vo v. Las Virgenes Municipal Water Dist.*, 79 Cal. App. 4th 440, 445

20   (2000). Generally, "the attorney who takes [a statutory fee-shifting] case can anticipate

21   receiving full compensation for every hour spent litigating a claim even against the most

22   polemical opponent." *Weeks v. Baker & McKenzie*, 63 Cal. App. 4th 1128, 1175 (1998).

23   However, courts should not be "enmeshed in a meticulous analysis of every detailed facet

24   of the professional representation." *Serrano v. Unruh*, 32 Cal. 3d 621, 642 (1982)

25   ("*Serrano IV*"). Rather, "[t]he essential goal in shifting fees (to either party) is to do rough

26   justice, not to achieve auditing perfection." *Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011).

27          Class Counsel have expended approximately 1745.8 hours thus far to prosecute this

28   action and secure benefits for the Class, exclusive of the hours that will be spent preparing

1  further briefing (including finalizing the motion for final approval and supervising the

2  continued administration of the settlement). Class Counsel have reviewed billing entries

3  describing tasks performed which attorneys entered contemporaneously into Class

4  Counsel's billing program. (*See* Zohdy Decl.) Following review of these voluminous

5  records, Class Counsel sorted the entries by task categories, summarizing those tasks for

6  the Court's convenience. (*Id.*)

7

| Lawyer | Title | CA Bar Yr | Rate | Hours | Fees |
|---|---|---|---|---|---|
| Jordan Lurie | Fmr. Of Counsel | 1987 | $950 | 39.8 | $37,810.00 |
| Raul Perez | Partner | 1994 | $950 | 28.5 | $27,075.00 |
| Steven Weinmann | Fmr. Senior Counsel | 1997 | $825 | 223.5 | $184,387.50 |
| Liana Carter | Senior Counsel | 1999 | $800 | 70.2 | $56,160.00 |
| Tarek Zohdy | Senior Counsel | 2006 | $675 | 491.9 | $332,032.50 |
| Cody Padgett | Senior Counsel | 2011 | $600 | 279.4 | $167,640.00 |
| Theresa Carroll | Senior Counsel | 1995 | $545 | 184 | $100,280.00 |
| Trisha Monesi | Associate | 2015 | $525 | 103.6 | $54,390.00 |
| Laura Goolsby | Associate | 2018 | $475 | 60.6 | $28,785.00 |
| Calvin Marshall | Attorney | 2017 | $295 | 264.3 | $77,968.50 |
| **Total** | | | | **1745.8** | **$1,066,528.50** |

The hours incurred reflect Class Counsel's exceptional efforts in surmounting a number of obstacles, including strong resistance from a well-financed opponent represented by highly experienced and skilled counsel, to secure a high-value Settlement for the Class. The following are the most time-intensive categories:

**Discovery and Investigation**. Class Counsel thoroughly investigated and researched the class claims, which allowed Class Counsel to better evaluate FCA's representations and omissions concerning the Stalling Defect. (Zohdy Decl. ¶ 14.) Among other tasks, Class Counsel fielded numerous inquiries from putative Class Members and investigated many of their reported claims. (*Id.*) Class Counsel also researched publicly

available materials as well as consumer complaints and discussions of transmission-related problems in articles and forums online, in addition to various manuals and technical service bulletins ("TSBs") discussing the alleged defect. (*Id.*) Class Counsel conducted research into the various causes of actions and other similar automotive actions. (*Id.*) Class Counsel consulted and retained both liability and damages experts to assist them in identifying the exact defect, devising a fix and quantifying the damages suffered by the class for the purpose of filing a motion for class certification. (*Id.*) Class Counsel also consulted and retained an expert to assist them in quantifying the value of the benefits conferred by the settlement. (*Id.*)

As to the discovery, in response to Plaintiffs' written discovery efforts, Class Counsel received over 100,000 pages of documents, including, *inter alia,* spreadsheets with thousands of rows of data, owners' manuals, maintenance and warranty manuals, internal FCA investigation reports, Technical Service Bulletins, field reports, warranty data, etc. (*Id.* at ¶¶ 15-16.) Informal information was also provided by Defendant to facilitate settlement discussions.

In addition to written discovery, Class Counsel deposed six FCA corporate representatives, including Jim Bielenda (Manager of Product Investigations), Vasil Germanski (Manager of the Systemic Quality Team), and FCA employees Douglas Swider, Alexander Sherman, Julian John, and James Kohut. (Zohdy Decl. ¶ 17.)

Further, the foregoing discovery and information was thoroughly and meticulously reviewed and analyzed by Class Counsel (*Id.*), enabling accurate assessment of the issues and potential claims in this matter and the strengths and weaknesses of the Parties' respective positions. (*Id.*) In addition, over the course of litigation, Class Counsel responded to numerous Class Members who reported issues with their Class Vehicles and sought guidance. (*Id.* at ¶ 18.) Class Counsel also conducted detailed interviews with Class Members regarding their pre-purchase research, their purchasing decisions, and their repair histories, and Class Counsel developed a plan for litigation and settlement based in part on Class Members' reported experiences with their Class Vehicles and with FCA dealers. (*Id.*)

By engaging in a thorough investigation and evaluation of Plaintiffs' claims, Class Counsel is confident that the instant Settlement, for the consideration and on the terms set forth in the Settlement Agreement, is, under all of the pertinent considerations, fair, reasonable, and adequate, as well as worthy of preliminary approval herein. (*Id.* at ¶¶ 25-27.)

**Advising Class Members**. Class Counsel has devoted substantial resources to this case, particularly in response to Class Members seeking a remedy for the alleged defect in their vehicles. Class Counsel has responded to hundreds of inquiries from Class Members, and will continue to do so. (*Id.* at ¶ 19.) During the litigation itself, Class Counsel advised Class Members as to the status of the litigation, reviewed their relevant documents, and documented their complaints in a detailed database. (*Id.* at ¶ 20.) Following preliminary approval and the dissemination of Class Notice, Class Counsel has continued to regularly field calls and emails from Class Members seeking further explanation and advice regarding the Settlement and its terms. (*Id.* at ¶ 21.) During this time—still ongoing as of the date of this filing—multiple attorneys have been required to perform work on this matter, largely in responding to Class Members' inquiries, and this work will continue into the future after settlement approval in this matter has been resolved. (*Id.* at ¶ 22.)

**Settlement Negotiations and Settlement Motions**. Class Counsel has also spent considerable time drafting the Settlement documents and associated motions. (*Id.* at ¶ 23.) This expenditure is reasonable and necessary given the nature of the Settlement negotiations and the Settlement drafting process. Class Counsel has also expended many hours preparing the Motion for Preliminary Approval, as well as the instant Motion. (*Id.* at ¶ 24.)

### 2.     The Hourly Rates are Reasonable

Class Counsel's hourly rates, which range from $295 for associates to $950 for senior attorneys and partners, are also reasonable. (*See* Zohdy Decl. ¶¶ 30-34 .) Counsel is entitled to their requested hourly rates if those rates are within the range of rates charged by and awarded to attorneys of comparable experience, reputation, and ability for similar

1    work, *i.e.*, complex class action litigation. *Children's Hospital and Med. Center v. Bonta*,

2    97 Cal. 4th 740, 783 (2002) (affirming rates that were "within the range of reasonable rates

3    charged by, judicially awarded to, comparable attorneys for comparable work"); *accord*

4    *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984) (determining reasonable rate by examining

5    the rate "prevailing in the community for similar services by lawyers of reasonably

6    comparable skill, experience, and reputation"). Prior judicial orders are probative evidence

7    of market rates. *See Margolin v. Regional Planning Com.*, 134 Cal. App. 3d 999, 1005

8    (1982) (rejecting the defendant's attacks on prior court orders and deeming such orders to

9    be highly probative of rates).

10    Class Counsel's rates are wholly consistent with rates approved by courts in this

11    district for major consumer class actions. [6] *See Chambers v. Whirlpool Corp.*, 214 F. Supp.

12    3d 877, 899 (C.D. Cal. 2016) (approving rates of $485 to $750 for consumer class action

13    attorneys on a contested fee motion); *Etter v. Thetford Corporation*, No. 13-00081-JLS,

14    2017 WL 1433312 (C.D. Cal. Apr. 14, 2017) (approving $275 to $775 for attorneys on a

15    contested fee motion); *Bravo v. Gale Triangle, Inc.*, No. 16-03347 BRO, 2017 WL

16    708766, at *17 (C.D. Cal. Feb. 16, 2017) (approving rates between $350 and $700).

17    Here, Class Counsel's rates have specifically been approved by California district

18    courts in approving settlements involving automotive defects. *See, e.g.*, *Wylie v. Hyundai*

19    *Motor America*, No. 8:16-cv-02102-DOC-JCG (C.D. Cal. March 2, 2020) (approving

20    Class Counsel's rates for Associates ($295 to $445) and Senior Counsel/Partners ($545 to

21    $775)); *MacDonald v. Ford Motor Co.*, No. 13 -02988-JST, 2016 WL 3055643, *9 (May

22

23    _____

24    [6] *See also*, *Kearney v. Hyundai Motor Am.*, No. 09-1298, 2013 U.S. Dist. LEXIS
91636 (C.D. Cal. June 28, 2013) (approving hourly rates of $650-$800 for senior attorneys

25    in consumer class action); *Parkinson v. Hyundai Motor America*, 796 F. Supp. 2d 1160,
1172 (C.D. Cal. 2010) (approving hourly rates between $445 and $675 per hour); *Richard*

26    *v. Ameri-Force Mgmt. Servs., Inc.* (San Diego Super. Ct., August 27, 2010, No. 37-2008-
00096019) ($695 to $750 per hour for partners; $495 an hour for associates); *Barrera v.*

27    *Gamestop Corp.* (C.D. Cal. Nov. 29, 2010, No. CV 09-1399) ($700 per hour for partners;
$475 per hour for associates); *Anderson v. Nextel Retail Stores, LLC* (C.D. Cal. June 20,

28    2010, No. CV 07-4480) ($655 to $750 per hour for partners; $300 to $515 an hour for
associates).

31, 2016) (approving rates of $370 to $695 for many of the same attorneys as here on a contested catalyst motion); *Klee v. Nissan N. Am., Inc.,* 2015 U.S. Dist. LEXIS 88270, *38 (C.D. Cal. July 7, 2015) (approving rates of $370 to $695 for Capstone attorneys in an automotive defect case); *Asghari v. Volkswagen Grp. Of America*, No. 13-02529-MMM, 2015 WL 12732462 (May 29, 2015) (same); *Aarons v. BMW of North America*, No. 11-7667-PSG, 2014 U.S. Dist. LEXIS 118442, *40-41 (C.D. Cal. Apr. 29, 2014) (same). In *Aarons*, the district court also approved rates for comparable plaintiffs'-side firms such as Baron & Budd (rates ranging from $775 for the requested partner to $390-$630 for non-partners), Wasserman, Comden, Casselman, & Essensten (rates ranging from $670-750 for partners and $300-500 for associates), and Blood Hurst & O'Reardon ($510-695 for partners).

Moreover, Class Counsel is a respected and accomplished plaintiffs'-side firm responsible for numerous class action settlements and significant appellate decisions. (*See* Zohdy Decl. ¶¶ 38-41; Ex. B.)

In sum, Class Counsels' hourly rates are within the range of hourly rates charged by comparable attorneys and approved by multiple jurisdictions, including by courts in the Southern District of California. As such, the requested rates should be approved.

### 3. A Negative Multiplier Confirms the Reasonableness of Class Counsel's Requested Fees

Multiplying the total hours Class Counsel billed to the litigation by their reasonable hourly rates yields a lodestar of $1,066,528.50. When plaintiffs seek an amount in fees that is less than what they actually billed, the requested fee amount is generally considered reasonable. *See*, *e.g.*, *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 854 (N.D. Cal. 2010) (finding that, if the court is asked to apply a negative multiplier, it "suggests the negotiated fee award is a reasonable and fair valuation of the services rendered to the class by Plaintiff's Counsel.").

Plaintiff's Counsel would otherwise be entitled to a *positive* multiplier based on factors most commonly cited by courts, including: (1) the contingent nature of the fee and

the complexity of the case; (2) the results achieved, and the awards made in similar cases; and (3) a percentage cross-check. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002); *accord In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 551 (2009). While no single factor is determinative of reasonableness, these factors also support Class Counsel's fee request. Indeed, as detailed *infra*, a multiplier of 2.0 (or higher) for Class Counsel would be justified. *See*, *e.g*., *MacDonald,* 2016 WL 3055643, at *10 (applying a 2.0 multiplier for contingent risk and results achieved by Class Counsel (Capstone Law APC) on a contested catalyst fee motion against Ford).

Of these preceding factors, the contingent risk factor is the single most important enhancement factor under California law for actions where statutory fees are available, and it must be considered by the court in fixing fees. *See Horsford*, 132 Cal. App. 4th at 399 (reversing a trial court order for failure to consider contingent risk for statutory fees); *Vizcaino*, 290 F.3d at 1049-1050. This enhancement stems from the "established practice in the private legal market to reward attorneys for taking the risks of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." *In re Washington Public Power Supply Sys. Sec. Litig*., 19 F.3d 1291, 1299 (9th Cir. 1994).

Here, the contingent risk that Class Counsel assumed is particularly notable. While Plaintiffs believe that their case is strong on the merits, FCA has raised a number of substantive defenses that present serious dangers to Plaintiffs' claims. These defenses include, *inter alia*, that the subject vehicles are not defective under relevant legal standards, that no warranties were breached, nor statutes violated, that there was no single universal Stalling Defect, and that issues that certain Class members may have experienced were rectified through the voluntary issuance of a safety recall and Service Action or TSBs.

In addition, Defendant maintains that this action is not suited for class certification outside of a settlement because of, *inter alia*, the many predominating individual issues as to liability and damages such as each putative class member's purchase or lease decision-making; what information, if any, was viewed and/or relied upon by each putative class member prior to purchase or lease, and the inherently individualized issues concerning

each putative class member and subject vehicle such as the condition of each vehicle, each owner's/lessee's maintenance of each vehicle and transmission, each owner's/lessee's use and manner of driving, as well as additional factors that may significantly affect the performance of any vehicle's transmission and power control module. Other inherently individualized issues include whether, and if so, to what extent, any putative class vehicle has, or would ever, experience any of the alleged stalling-related issues; what issue, if anything, any given owner may have presented to any dealership under the vehicle's applicable warranty, when and what occurred in each instance, and whether any applicable warranty was breached under each putative class member's specific circumstances, and also, the myriad differences among the 50 states' laws, including burdens of proof, with respect to the various legal claims asserted, that would render it very difficult to certify a nationwide class in the litigation context.

Notably, even the existence of a defect alone does not *ipso facto* lead to legal liability or establish concrete damages under federal or state statutes, *see*, *e.g.*, *Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980, 991-92 (N.D. Cal. 2010) (granting defendant's motion for summary judgment and finding alleged ignition-lock defect not a safety risk), *aff'd*, 462 F. App'x 660 (9th Cir. 2011).

While Plaintiffs would vigorously dispute these arguments, they cannot refute that consumers bringing automotive defect actions are frequently denied class certification due to a lack of common proof.[7] Recently, a California district court denied class certification involving a theory based on material omission of an automotive defect. *See Stockinger v. Toyota Motor Sales, U.S.A., Inc.*, 2020 WL 1289549, at *6 (C.D. Cal. Mar. 3, 2020) (finding plaintiffs failed to satisfy the commonality and predominance requirements of Rule 23 in a similar automotive defect action alleging material omissions and breaches of

---

[7] *See*, *e.g.*, *Grodzitsky v. Am. Honda Motor Co.*, 2014 WL 718431 (C.D. Cal. Feb. 19, 2014) (denying certification due to lack of evidence that common materials were used for all defective "window regulators" in the class); *Cholakyan v. Mercedes-Benz USA, LLC*, 281 F.R.D. 534, 553 (C.D. Cal. 2012) ("There is also no evidence that a single design flaw that is common across all of the drains in question is responsible for the alleged water leak defect…").

the implied warranty of merchantability). *Stockinger* underscores the heightened litigation risk for Plaintiffs seeking class certification. In contrast, class certification in the settlement context is different because, unlike litigation, the court does not need to be concerned with manageability issues that predominating individual factors might cause. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d at 556 (en banc).

This body of recent case law demonstrates that, had the case continued, "plaintiffs [would] face[] a substantial risk of incurring the expense of a trial without any recovery." *In re Toys "R" Us-Del FACTA Litig.*, 295 F.R.D. at 451. Indeed, the risk of continuing litigation, including the risk of new adverse statutory or case law, increased costs, and expiration of a substantial amount of time, weigh heavily in favor of settlement. *Rodriguez*, 563 F.3d at 966. In particular, a class action such as this, involving over approximately 450,000 vehicles, has the strong potential to engulf plaintiffs and attorneys in protracted, resource-draining court battles, the outcome of which is uncertain. *See, e.g., Aarons v. BMW of N. Am. LLC*, 2014 WL 4090564 *11-13 (C.D. Cal. Apr. 29, 2014) (approving a settlement for repairs/reimbursement of transmission defect and observing that "it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." [citation omitted]).

Aside from certification risk in the litigation context, Plaintiffs could face the termination of their action at summary judgment or at trial. *See In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201, *3 (N.D. Cal. Nov. 26, 2007) (recognizing that "inherent risks of proceeding to... trial and appeal also support the settlement"). And, if Plaintiffs prevail in some fashion on class certification and/or trial, appeals would be likely and any benefits to which certain Class Members may be entitled could be significantly reduced, delayed, or offset by substantial additional vehicle use, mileage, and ordinary wear and tear by the time any such recovery might occur.

In short, Class Counsel has faced the crippling, if not termination, of their action at every stage of the instant litigation. For this type of contingent risk, courts have applied

1    multipliers of 2.0 or above. *See Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294,

2    298 (N.D. Cal. 1995) (stating the existence of a "3-4 range [of] common" multipliers for

3    sophisticated class actions); *Steiner v. American Broad. Co.*, 248 Fed. Appx. 780, 783 (9th

4    Cir. 2007) (affirming fee award where the lodestar multiplier was 3.65). *See also, Graham*,

5    34 Cal. 4th at 581 (affirming a 2.25 multiplier for work on the merits); *Sutter Health*

6    *Uninsured Pricing Cases*, 171 Cal. App. 4th 495, 512 (2009) (applying a 2.52 multiplier

7    in an antitrust class action); *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 60 (2008)

8    (applying a 2.5 multiplier in a consumer class action).

9    **C.    The Expenses Advanced by Class Counsel Should be Reimbursed**

10    For litigation expenses, prevailing parties may recover, as part of statutory

11    attorneys' fees recovery, "litigation expenses…when it is 'the prevailing practice in the

12    given community' for lawyers to bill those costs separate from their hourly rates." *Trs. of*

13    *the Constr. Indus. and Laborers Health and Welfare Trust v. Redland Ins. Co.*, 460 F.3d

14    1253, 1258 (9th Cir. 2006) (citation omitted). Attorneys are reimbursed for out-of-pocket

15    expenses "such as '1) meals, hotels, and transportation; 2) photocopies; 3) postage,

16    telephone, and fax; 4) filing fees; 5) messenger and overnight delivery; 6) online legal

17    research; 7) class action notices; 8) experts, consultants, and investigators; and 9) mediation

18    fees.'" *Johnson v. General Mills, Inc.*, No. 10-00061-CJC, 2013 U.S. Dist. LEXIS 90338,

19    *20-*21 (C.D. Cal. June 17, 2013) (quoting *In re Immune Response Sec. Litig.*, 497 F.

20    Supp. 2d 1166, 1177 (S.D. Cal. 2007) (both courts awarding the requested expenses,

21    including for expert witnesses, mediation, photocopying and computerized research).

22    Here, Class Counsel have incurred $146,079.40 in costs and expenses that would

23    typically be billed to a paying client. Thus, the costs Class Counsel advanced on behalf of

24    the Class, as documented in the appended declaration, should be reimbursed. (Zohdy Decl.

25    ¶¶ 35-36.)

26    **D.    The Requested Service Awards Are Fair and Reasonable and Should**

27    **Be Approved**

28    Incentive awards are routinely awarded as compensation for named plaintiffs'

1   undertaking the risk and expense of litigation to advance the class's interests.

2   *See Rodriguez v. W. Pub. Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009). In light of the

3   valuable benefits conferred to Class Members, the sum of $10,000 to each named Plaintiff

4   is modest and well within the range of service awards that have been approved in similar

5   cases.

6         Plaintiffs are entitled to service awards for their time and effort to support a case in

7   which they had a modest personal interest, but which provided considerable benefits to

8   Class Members—a commitment undertaken without any guarantee of recompense. *See In*

9   *re Online DVD-Rental Antitrust Litig.,* 779 F.3d 934, 943 (9th Cir. 2015). Each Plaintiff

10  searched for, reviewed, and provided documents to, and consulted with, Counsel about the

11  claims in this case and assisted throughout the course of the litigation. Plaintiffs reviewed

12  the allegations, kept in constant contact with Class Counsel regarding the status of the case,

13  and responded to inquiries regarding Defendant's efforts to remedy the problems Plaintiffs

14  experienced. Each Plaintiff also thoroughly prepared for deposition and subsequently was

15  deposed. Plaintiffs have also stayed abreast of Settlement negotiations, reviewed the

16  Settlement terms, and approved the Settlement on behalf of the Class. Finally, Plaintiffs

17  have provided their vehicle on several prolonged occasion for both Plaintiffs' expert and

18  Defendant's inspection, and have had to maintain ownership of their unsafe vehicle for a

19  multiyear litigation. (Zohdy Decl. ¶ 37.)

20  **V.     CONCLUSION**

21        For the foregoing reasons, Plaintiffs respectfully request that the Court grant

22  Plaintiffs' motion and award fees and costs of $835,000, as well as service awards of

23  $10,000 for each named Plaintiff.

24

25  Dated: October 26, 2022                Respectfully submitted,

26

27                                   By: /s/ Tarek H. Zohdy
                                         Tarek H. Zohdy
28                                       Cody R. Padgett
                                         Laura E. Goolsby

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CAPSTONE LAW APC

Attorneys for Plaintiffs Alfonso
and Arlene Moran

MEMORANDUM ISO MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE SERVICE AWARDS